798 A.2d 566

STATE of Maryland

v.

Jerrod Leroy THOMAS.

No. 86 Sept. Term, 2001.

Court of Appeals of Maryland.

May 10, 2002.

Gary E. Bair, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for petitioner.

Mark Colvin, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, Chief Judge.

The issue in this case is whether, when the defendant is charged with distribution and possession of a controlled dangerous substance, it is an abuse of discretion for the trial court to refuse to ask the venire panel if any of them harbored "strong feelings regarding violations of the narcotics laws." The Court of Special Appeals held that it was, *Thomas v. State*, 139 Md.App. 188, 207–08, 775 A.2d 406, 408 (2001), and the State, the petitioner, by filing a Petition for Writ of Certiorari, requested our review of that judgment. We granted the petition, *State v. Thomas*, 366 Md. 246, 783 A.2d 221 (2001), and now affirm.

## I.

On May 20, 1999, the respondent, Jerrod Leroy Thomas, was charged with possession and distribution of cocaine. The respondent was tried, and ultimately convicted, by a jury in the Circuit Court for Howard County. During voir dire, the respondent asked the trial court to propound to the panel, among others, the following voir dire question:

"Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged?" [1]

---

1. As to this question, with respect to its compliance with this Court's recent decision in *Dingle v. State*, 361 Md. 1, 759 A.2d 819 (2000), the Court of Special Appeals observed:

The trial court refused to do so,[2] explaining that the question was "fairly covered by other questions, or the Court does not find it necessary to ask" it. *Thomas,* 139 Md.App. at 195, 775 A.2d at 410. The trial court previously had inquired, after apprising the venire of the allegations involved in the case, whether any member of the panel knew anything about the case, had formed an opinion regarding it or had other information about the case. It had also asked whether "there [was] any other reason why any member of this panel feels that if they are picked as a juror in this case they would not be [able] to be a fair and impartial juror and decide this case based solely on the evidence in this case and the law as I would instruct you in this case." [3]

"Preliminarily, we note that the current "two-part" form of Question No. 10 is unacceptable under the Dingle ruling. As the voir dire in the instant case took place before the Court of Appeals filed Dingle on September 15, 2000, we do not fault Thomas for proposing Question No. 10 as a two-part question. Further, we believe the issue of the trial judge's discretion is still properly before this Court. In accordance with Dingle, the circuit court must pose Question No. 10 to the venire through two questions. The first question should identify any jurors who harbor strong feelings about narcotics or the laws governing narcotics. Then, the trial court should individually ask those members of the venire who responded affirmatively follow-up questions regarding their ability to be fair and impartial despite their strong feelings."

*Thomas v. State,* 139 Md.App. at 202, 775 A.2d at 415. We do not share the intermediate appellate court's interpretation of *Dingle* as it relates to this case and, thus, we do not believe the guidance it offers is necessary. When the inquiry is into the state of mind or attitude of the venire with regard to a particular crime or category of crimes, it is appropriate to phrase the question as was done in this case.

2.  Urging the trial court to ask the question, the respondent argued:
    "I think that [question] goes directly to challenge for cause. I think there are some folks who do have such strong feelings. The Court has only asked a general question about whether they haven't been asked about something that might effect them. I think the Defendant is entitled to a question that goes specifically to that ground for challenge for cause, so I take exception to the Court not asking that question."

3.  In addition, the trial court asked whether any member of the panel knew or "had any prior relationships, dealings, involvements or contacts" with the respondent, his attorney, the assistant state's attorney, or the witnesses, whether any member of the venire "was inclined to

Following his sentencing, the respondent noted an appeal to the Court of Special Appeals. That court, as we have seen, agreeing with the respondent, held that the lower court abused its discretion by refusing to propound the voir dire question proposed by the respondent and, therefore, reversed the judgment of conviction. *Thomas,* 139 Md.App. at 193, 775 A.2d at 409. The intermediate appellate court concluded that the proposed voir dire question was "a valid question reasonably likely to uncover a bias that is directly related to the crime" on trial and that did "pose an obstacle to impaneling a fair and impartial jury," *id.* at 206, 775 A.2d at 417, and, furthermore, that "[n]o other question asked of the venire adequately covered the area of undue influence [the respondent] sought to discover with [the question]." *Id.* at 207–08, 775 A.2d at 418.

## II.

The principles pertinent to the conduct and scope of voir dire have been addressed by this Court and the Court of Special Appeals so often as to be well-known and well-settled. We most recently reviewed them in *Dingle v. State,* 361 Md. 1, 759 A.2d 819 (2000). We stated as follows:

"Voir dire, the process by which prospective jurors are examined to determine whether cause for disqualification exists, *see Boyd v. State,* 341 Md. 431, 435, 671 A.2d 33, 35 (1996), is the mechanism whereby the right to a fair and impartial jury, guaranteed by Art. 21 of the Maryland Declaration of Rights, ... *see Grogg v. State,* 231 Md. 530, 532, 191 A.2d 435, 436 (1963), is given substance. *See Hill v. State,* 339 Md. 275, 280, 661 A.2d 1164, 1166 (1995); *Bedford v. State,* 317 Md. 659, 670, 566 A.2d 111, 116 (1989).

give more or less weight to the testimony of a police officer or other law enforcement officer than to the testimony of another witness" simply because of the officer's status as a law enforcement officer, whether any member of the venire was unable to attend the two-day trial, whether any member of the venire had been charged with or convicted of a crime, and whether any member or a close family member of that member had been a victim of crime.

The overarching purpose of voir dire in a criminal case is to ensure a fair and impartial jury. *See Boyd,* 341 Md. 431, 435, 671 A.2d 33, 35 (1996); *Hill,* 339 Md. 275, 279, 661 A.2d 1164, 1166 (1995); *Davis v. State,* 333 Md. 27, 34, 633 A.2d 867, 871 (1993); *Bedford,* 317 Md. 659, 670, 566 A.2d 111, 117 (1989); *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 605, 143 A.2d 627, 631 (1958); *Adams v. State,* 200 Md. 133, 140, 88 A.2d 556, 559 (1952). In *Davis [v. State],* 333 Md. [27,] 33, 633 A.2d [867,] 871, quoting *Langley v. State,* 281 Md. 337, 340, 378 A.2d 1338, 1339 (1977) (citing *Waters v. State,* 51 Md. 430, 436 (1879)), we said, 'a fundamental tenet underlying the practice of trial by jury is that each juror, as far as possible, be impartial and unbiased.'

We recognized in *Davis* that:

'There are two areas of inquiry that may uncover cause for disqualification: (1) an examination to determine whether prospective jurors meet the minimum statutory qualifications for jury service, see Maryland Code (1974, 1989 Repl. Vol., 1992 Cum.Supp.), Courts & Judicial Proceedings Article, § 8–207; or (2) " 'an examination of a juror ... conducted strictly within the right to discover the state of mind of the juror in respect to the matter in hand or any collateral matter reasonably liable to unduly influence him.' "

*Id.* at 35–36, 759 A.2d 819, 633 A.2d at 871–72, quoting *Bedford,* 317 Md. at 671, 566 A.2d at 117 (quoting *Corens v. State,* 185 Md. 561, 564, 45 A.2d 340, 343 (1946)). Thus, we said in *Hill,* 339 Md. at 279, 661 A.2d at 1166 (quoting *McGee v. State,* 219 Md. 53, 58, 146 A.2d 194, 196 (1959), in turn quoting *Adams v. State,* 200 Md. 133, 140, 88 A.2d 556, 559 (1952)):

'Undergirding the voir dire procedure and, hence, informing the trial court's exercise of discretion regarding the conduct of the voir dire, is a single, primary, and overriding principle or purpose: "to ascertain 'the existence of cause for disqualification.' "

In so doing, the questions should focus on issues particular to the defendant's case so that biases directly related to the crime, the witnesses, or the defendant may be uncov-

ered.... *See Alexander v. R.D. Grier & Sons Co. Inc.,* 181 Md. 415, 419, 30 A.2d 757, 758 (1943), in which the trial court's refusal to ask 'whether or not [jurors] or any of their immediate family [were assessables] in the Keystone Indemnity Exchange,' where the issue at trial was the enforcement of an assessment against a subscriber by Keystone and the juror's financial interest 'would theoretically incline him in favor of recovery of a verdict for the liquidator,' was held to be an abuse of discretion, the question being directed at determining whether any juror was biased or prejudiced. *See also Morford v. United States,* 339 U.S. 258, 70 S.Ct. 586, 94 L.Ed. 815 (1950) (finding that where panel from which the jury was selected consisted of almost entirely government employees, refusal to allow questions pertaining to possible influence of the federal loyalty oath was error). Indeed, as we held in *Bedford,* "any circumstances which may reasonably be regarded as rendering a person unfit for jury service may be made the subject of questions and a challenge for cause." 317 Md. at 671, 566 A.2d at 117, quoting *Corens v. State,* 185 Md. at 564, 45 A.2d at 343. In addition, we have also held that,

> 'If there is any likelihood that some prejudices in the jurors' mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case. Otherwise, the right of trial by an impartial jury guaranteed to him ... might well be impaired....'

*Bedford,* 317 Md. at 671, 566 A.2d at 117; quoting *Brown v. State,* 220 Md. 29, 35, 150 A.2d 895, 897–98 (1959), quoting *State v. Higgs,* 143 Conn. 138, 142, 120 A.2d 152, 154 (1956)."

361 Md. at 9–11, 759 A.2d at 823–24 (footnotes omitted).

It is the application of those principles to particular fact patterns that presents the difficulty. This case is illustrative.

The State does not disagree with these guiding principles; in fact, it cites virtually the same principles, but as penned by Judge Chasanow in *Davis v. State,* 333 Md. 27, 34–35, 633 A.2d 867, 871 (1993).[4] Relying on those principles as applied in that case, the State argues, diametrically opposite to the result reached by the Court of Special Appeals, that although it would not have committed error had it chosen to ask the voir dire question proposed by the respondent, the trial court did not abuse its discretion when it refused to ask the question.

At issue in *Davis* was the court's refusal, premised on its conclusion that the inquiry "[did] not relate to cause for disqualification," *id.* at 36, 633 A.2d at 872, to ask the venire the question, whether any member of the venire or a close friend or relative, was, or had been, a member of the law enforcement community. The Court reasoned that an affirmative answer to the question would not have established such cause, *id.* at 36–37, 633 A.2d at 872, and that

"First, the fact that a prospective juror is or was a member of a law enforcement body does not automatically disqualify that venire person. *See Harris v. State,* 82 Md.App. 450, 470, 572 A.2d 573, 583 (trial judge did not err when he failed to strike former state trooper for cause where trooper indicated that he was able to render fair and impartial judgment despite earlier employment), *cert. denied,* 320 Md. 800, 580 A.2d 218 (1990). Likewise, the mere fact that a prospective juror is related to or associated with members of the law enforcement community does not constitute cause for disqualification. *Goldstein v. State,* 220 Md. 39, 45, 150 A.2d 900, 904 (1959); *Shifflett v. State,* 80 Md.App. 151, 156,

---

4. The dissent in *Davis v. State,* like the State in this case, took no issue with the controlling principles, as explicated by the majority in that case, "parting company only on the question of whether the inquiry sought to be made ... was for the purpose of ascertaining 'the existence of cause for disqualification and for no other purpose.'" 333 Md. at 57, 633 A.2d at 882 (Bell, J. dissenting) (quoting *McGee v. State,* 219 Md. 53, 58, 146 A.2d 194, 196 (1959) (quoting *Adams v. State,* 200 Md. 133, 140, 88 A.2d 556, 559 (1952))).

560 A.2d 587, 589 (1989), *aff'd on other grounds,* 319 Md. 275, 572 A.2d 167 (1990); *Baker v. State,* 3 Md.App. 251, 254, 238 A.2d 561, 564 (1968). In general, the professional, vocational, or social status of a prospective juror is not a dispositive factor establishing cause to disqualify. Rather, the proper focus is on the venire person's state of mind, and whether there is some bias, prejudice, or preconception. Short of those instances where there is a demonstrably strong correlation between the status in question and a mental state that gives rise to cause for disqualification, mere status or acquaintance is insufficient to establish cause for disqualification of a prospective juror. The fact that a prospective juror is employed as, related to, or associated with a law enforcement officer does not establish that the prospective juror has any undue bias or prejudice that will prevent that person from fairly and impartially determining the matter before them. *See Goldstein,* 220 Md. at 44–45, 150 A.2d at 904. The inquiry must instead focus on the venire person's ability to render an impartial verdict based solely on the evidence presented."

*Id.* at 37, 633 A.2d at 872.

The State also maintains that the trial court correctly ruled that the proposed inquiry was covered by other questions designed to elicit the same information. It points out that the venire was informed that the respondent was charged with selling narcotics to an undercover police officer and asked if anyone had information about the incident, and later the venire was given "an additional opportunity to express any feelings or concerns that might adversely impact on their ability to be fair and impartial and to render a verdict based exclusively on the evidence presented." The State concludes, "[t]he court's voir dire questions adequately ensured that potential jurors would reveal any biases they harbored about narcotics or the laws governing them."

*Davis* is inapposite to the resolution of the case *sub judice.* There, the inquiry the respondent sought to have made was into, and about, the prospective jurors' statuses, associations, or affiliations, not their attitudes. As the passage from the

*Davis* opinion set out above demonstrates, the *Davis* Court well understood and recognized the distinction. Indeed, it emphasized that it is the venire person's state of mind, in particular, whether there is some bias, prejudice, or preconception, that is the proper focus of voir dire, rather than the professional, vocational, or social status of a prospective juror, which is not a dispositive factor establishing cause to disqualify. *Davis,* 333 Md. at 37–38, 633 A.2d at 872–73. The *Davis* Court concluded that there must be a demonstrably strong correlation between the status, association, or affiliation and a mental state that gives rise to cause for disqualification. *Id.*

As indicated, the respondent's concern in this case was the venire persons' attitude concerning the crime with which the respondent was charged. The Court of Special Appeals concluded, we think correctly, that such an inquiry is directed at biases, specifically, those related to the respondent's alleged criminal act, which if uncovered are disqualifying when they impair the ability of the juror to be fair and impartial. *Thomas,* 139 Md.App. at 202, 775 A.2d at 415. The intermediate appellate court's analysis is instructive.

Relying on this Court's opinion in *King v. State,* 287 Md. 530, 536, 414 A.2d 909, 912 (1980),[5] in which we stated, "[i]t is common knowledge that a significant segment of our society believes, as a matter of public policy, that the criminal laws relating to marijuana should be modified in one way or another," and *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), explaining "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment," the Court of Special Appeals notes that it is not extraordinary for most citizens to have a bias against proscribed criminal acts and that "[p]rospective jurors with strong feelings about drugs are not uncommon." *Thomas,* 139 Md.App. at 203, 204, 775

---

**5.** In *King v. State,* 287 Md. at 539, 414 A.2d at 913, characterizing them as a significant part of the community, we reversed a ruling excluding, for cause, without further inquiry as to their ability to be fair and impartial, jurors who expressed the belief that the marijuana laws should be changed.

A.2d at 415. After reviewing some of the literature address-
ing "controversial alternatives to the nation's current drug
prohibition laws," [6] *id.* at 204, 775 A.2d at 415, the intermedi-
ate appellate court observes that "the 'war on drugs' continues
to be a household phrase," *id.*, reports that there is a view that
the "war" can create biases that alter the impartial state of
mind of a prospective juror,[7] *id.* at 204–205, 775 A.2d at 417,
and offers, citing a pending case in the Court of Special
Appeals and the *King* case, evidence that voir dire questions
on drug attitudes "are effective in revealing strong feelings
towards narcotics laws that may hinder a juror's ability to
serve." *Id.* at 205, 775 A.2d at 416. Noting that the areas of
inquiry that must be pursued, if reasonably related to the case
at hand, "entail potential biases or predispositions that pro-
spective jurors may hold which, if present, would hinder their
ability to objectively resolve the matter before them, *id.* at
206, 775 A.2d at 417, citing and quoting *Davis*, 333 Md. at 36,
633 A.2d at 872, the Court of Special Appeals opines:

---

6. Mathea Falco, *Toward a More Effective Drug Policy*, 1994 U. Chi.
Legal F. 9, 9; Eric E. Sterling, *Symposium: The Sentencing Controver-
sy: Punishment and Policy in the War Against Drugs: The Sentencing
Boomerang: Drug Prohibition Politics and Reform*, 40 Vill.L.Rev. 383,
384 (1995); Melody M. Heaps and Dr. James A. Swartz, *Toward a
Rational Drug Policy: Setting New Priorites*, 1994 U. Chi. Legal F. 175;
Tracey L. Meares, *Symposium: Rethinking Federal Criminal Law:
Charting Race and Class Differences in Attitudes Toward Drug Legaliza-
tion and Law Enforcement: Lessons For Federal Criminal Law*, 1 Buff.
Crim. L.R. 137 (1997).

7. Eric E. Sterling, President of the Criminal Justice Policy Foundation,
states:
"At the same time, the 'drug war' label transformed those who used
drugs—ostensibly those who were supposed to be helped by drug
laws—into the enemy and then into a subhuman category of 'the
druggies' or 'druggers.' They ceased to be people with drug problems,
chemical disorders, or brain disease, and became the 'bad guys,' as the
public's hatred of drugs grew into a hatred of druggies. For the Drug
Enforcement Agency (DEA), and DEA personnel who train State and
local police, this hatred translated into a variety of practices: druggies
and their families could be rousted, humiliated, terrorized, jailed, hurt,
threatened with being shot, or even, if necessary, shot."
Sterling, *supra*, at 398–99.

"Laws regulating and prohibiting the use of controlled dangerous substances harbor an unusual position within our criminal code, such that jurors may be biased because of strong emotions relating to the dangers of narcotics and their negative effects upon our cities and neighborhoods, or, on the contrary, biases may exist because of passionate positions that advocate the decriminalization of narcotics. Moreover, unlike the clear disparity in favor of the prosecution created by "death-qualified" juries, jurors with strong feelings about drug laws are as equally inclined to hold biases against the State as they are against the defendant."

*Id.* at 207, 775 A.2d at 418 (footnote omitted). The court held that "the potential biases sought to be revealed by [the respondent's proposed voir dire question] pose an obstacle to impaneling a fair and impartial jury." *Id.* at 206, 775 A.2d at 417.

█ As we have seen, and so often reiterated, the single, primary, and overriding principle or purpose of voir dire is to ascertain " 'the existence of cause for disqualification.' " *Hill,* 339 Md. at 279, 661 A.2d at 1166 (quoting *McGee v. State,* 219 Md. 53, 58, 146 A.2d 194, 196 (1959), in turn, quoting *Adams v. State,* 200 Md. 133, 140, 88 A.2d 556, 559 (1952)), and this is accomplished through the pursuit of one of the two mandatory areas of inquiry, *i.e.,* "an examination of a juror . . . conducted strictly within the right to discover the state of mind of the juror in respect to the matter in hand or any collateral matter reasonably liable to unduly influence him.' " *Davis,* 333 Md. at 35–36, 633 A.2d at 871–72 (quoting *Bedford,* 317 Md. at 671, 566 A.2d at 117, in turn, quoting *Corens v. State,* 185 Md. 561, 564, 45 A.2d 340, 343 (1946)). We have been emphatic, even in civil cases, that "a party is entitled to a jury free of all disqualifying bias or prejudice without exception, and not merely a jury free of bias or prejudice of a general or abstract nature." *Casey v. Roman Catholic Archbishop of Baltimore,* 217 Md. 595, 606, 143 A.2d 627, 631 (1958). And, although we have entrusted the trial court with considerable discretion, we have admonished:

' "In the exercise of that discretion, the trial judge should adapt the questions to the needs of each case in the effort to secure an impartial jury. Any circumstances that may reasonably be regarded as rendering a person unfitted for jury service may be made the subject of questions and a challenge for cause. Accordingly an examination of a juror on his voir dire is proper as long as it is conducted within the right to discover the juror's state of mind in respect to the matter in hand or any collateral matter reasonably liable to unduly influence him. *Corens v. State*, 185 Md. 561, 564, 45 A.2d 340; *Grossfeld v. Braverman*, 203 Md. 498, 101 A.2d 824.' "

*Langley v. State*, 281 Md. 337, 342, 378 A.2d 1338, 1340 (1977) (quoting *Bryant v. State*, 207 Md. 565, 583, 115 A.2d 502, 510 (1955)).

A question aimed at uncovering a venire person's bias because of the nature of the crime with which the defendant is charged is directly relevant to, and focuses on, an issue particular to the defendant's case and, so, should be uncovered. *See Alexander v. R.D. Grier & Sons Co. Inc.*, 181 Md. 415, 419, 30 A.2d 757, 758 (1943). We agree with the intermediate appellate court: the proposed voir dire question should have been asked. The trial court abused its discretion when it refused to do so.

We also agree with the intermediate appellate court that the voir dire questions actually propounded to the venire, including those on which the State relies, were not reasonably calculated to ascertain the bias the respondent sought to uncover. The general voir dire question on which the trial court relied, and to which the State directs us now, falls squarely within the class of "general questions" rejected in *Davis v. State*. As the Court of Special Appeals rightly noted, in that case, we cautioned against the use of such questions to ascertain bias of a specific kind:

"[W]here the parties identify an area of potential bias and properly request voir dire questions designed to ascertain jurors whose bias could interfere with their ability to fairly

and impartially decide the issues, then the trial judge has an obligation to ask those questions of the venire panel. *Merely asking general questions such as "is there any reason why you could not render a fair and impartial verdict," is not an adequate substitute for properly framed questions designed to highlight specific areas where potential jurors may have biases that could hinder their ability to fairly and impartially decide the case."*

333 Md. at 47, 633 A.2d at 877 (emphasis supplied). *See also Casey v. Roman Catholic Archbishop of Baltimore,* 217 Md. at 606, 143 A.2d at 631.

In that case, an action for damages against the Roman Catholic Archbishop of Baltimore, a corporation sole of the State of Maryland, as the holder of the legal title to premises on which the plaintiff was injured when she slipped and fell, *id.* at 600–01, 143 A.2d at 628–29, the plaintiff asked the court to inform the venire that the defendant was a corporation sole and, as such, was the owner, with possession and control of the premises. She also requested that the court propound two voir dire questions on the subject:

"(1) Does any member of the jury panel have any preconceived objections to, or any preconceived opinions in favor of, or any bias or prejudice in favor of or against, a suit in which Roman Catholic Archbishop of Baltimore, a corporation sole of the State of Maryland, is sought to be held liable in damages for injuries claimed to have resulted to a person, a member of the Parish of the Roman Catholic Church in which such person claims to have been injured, that would prevent you from fairly and impartially deciding such a case?

"(2) If, in your opinion, the evidence in the case warrants a verdict for the plaintiff, Miss Casey, against Roman Catholic Archbishop of Baltimore, a corporation sole of the State of Maryland, the defendant, is there any member of the jury panel who could not fairly and impartially assess damages in the case in the same manner as if the defendant were a regular corporation or a natural person?"

*Id.* at 604, 143 A.2d at 630. Refusing to inform the venire as requested, or to propound the questions submitted by the plaintiff, the trial court asked instead:

> "Is there any reason, such as religious scruples or any other reason, which would prevent any one of you from giving the parties a fair and impartial trial, finding a verdict based only on the law and the evidence?"

*Id.* We reversed a jury verdict that the plaintiff appealed as inadequate, stating

> "[I]t is clear that the only question propounded by the court was not sufficient to determine possible cause for disqualification by reason of bias or prejudice or otherwise. The question asked was in a form so general that it is likely it did not sufficiently indicate to the panel of jurors what possible bias or prejudice was being probed."

*Id.* at 606, 143 A.2d at 631.

The State characterizes the Court of Special Appeals' opinion as an "unprecedented precedent," which is "as alarming as it is far reaching," forecasting that it places Maryland, with its history of limited voir dire, on a slippery slope, "with no stopping point to its rationale," that is bound to lead to the expansive, even unlimited, voir dire that this Court rejected in *Davis.* We do not share the State's concerns. To be sure, requiring a trial court to inquire, when requested, into the attitude or mental state of the prospective jurors, with respect to the crime on trial, may mean expanding the scope of the voir dire somewhat; in addition to those the trial court normally asks, it may be necessary to ask an additional two or three questions. But, we do not regard enforcing that which is already required during voir dire as an expansion of the voir dire process.[8]

Moreover, we continue to be of the view we expressed in *Dingle.* There, cognizant that "there may be, and often is, a

---

8. If, however, requiring the proposed inquiry could be construed to be an expansion of the voir dire process, it certainly can not be construed to be an unreasonable one.

conflict between keeping the voir dire process limited and the goal of ferreting out cause for disqualification," we opined:

"The broad discretion of the trial court and the rigidity of the limited voir dire process are tempered by the importance and preeminence of the right to a fair and impartial jury and the need to ensure that one is impaneled. Thus, we have made clear that 'this Court will prescribe the juror voir dire process . . . as is necessary . . . to uncover disqualifying bias.' "

*Dingle,* 361 Md. at 14, 759 A.2d at 826 (quoting *Boyd,* 341 Md. at 433, 671 A.2d at 34).

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.

RAKER and HARRELL, JJ., concur.

BATTAGLIA, J., dissents.

RAKER, J., concurring, joined by HARRELL, J.:

I join in the opinion of the Court and write separately to explain my reasons.

Maryland is one of the few states in the country that does not permit voir dire to inform the exercise of peremptory challenges. It has long been the rule in Maryland that voir dire is limited to the detection of bias sufficient to challenge a prospective juror for cause and not to assist in the exercise of peremptory challenges. *See* maj. op. at 11 (stating that "the single, primary, and overriding principle or purpose of voir dire is to ascertain 'the existence of cause for disqualification' ") (citations omitted); *Dingle v. State,* 361 Md. 1, 759 A.2d 819 (2000) (and cases cited therein); *Davis v. State,* 333 Md. 27, 633 A.2d 867 (1993).

I discern a trend in Maryland, on a case-by-case basis, to expand voir dire. The majority notes that "[i]f;. . requiring the proposed inquiry could be construed to be an expansion of the voir dire process, it certainly can not be construed to be an unreasonable one." Maj. op. at 14 n. 8. This expanded right is addressed in the context of the exercise of challenges for

cause, but, in my view, the expansion is, in reality, in the area of peremptory challenges. The discretion of trial judges in controlling voir dire is, little by little and case by case, being diminished. For example, this Court has identified ever-increasing areas of mandatory inquiry. *See Dingle,* 361 Md. at 10 n. 8, 759 A.2d at 824 n. 8. We require inquiry, when requested, into racial, ethnic, and cultural bias, *see Hernandez v. State,* 357 Md. 204, 232, 742 A.2d 952, 967 (1999); *Hill v. State,* 339 Md. 275, 285, 661 A.2d 1164, 1169 (1995); *Bowie v. State,* 324 Md. 1, 15, 595 A.2d 448, 455 (1991); religious bias, *see Casey v. Roman Catholic Arch.,* 217 Md. 595, 606–07, 143 A.2d 627, 632 (1958); predisposition as to the use of circumstantial evidence in capital cases, *see Corens v. State,* 185 Md. 561, 564, 45 A.2d 340, 343–44 (1946); and placement of undue weight on police officer credibility, *see Langley v. State,* 281 Md. 337, 349, 378 A.2d 1338, 1344 (1977).

In my view, *Dingle* represented the highwater mark in the sea change. *See Dingle,* 361 Md. at 22, 759 A.2d at 831 (Raker, J., dissenting) (noting that "the true issue in this case is different in kind from the many this Court has been called upon to address"). Rather than continue this case-by-case expansion of the scope of voir dire examination for cause, and in its wake continue to reverse judgments based on voir dire error, let us, once and for all, join the rest of the country and expand the purpose of voir dire in Maryland to include the informed exercise of peremptory challenges. Since we have not moved to abolish peremptory challenges,[1] let us at least afford counsel the information necessary to exercise an informed challenge. To that end, I would endorse a voir dire process that would enable a lawyer to elicit sufficient informa-

---

1. Following *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), there has been, from time to time, a call to abolish peremptory challenges. *See, e.g., id.* at 102, 106 S.Ct. at 1726, 90 L.Ed.2d 69 (Marshall, J., concurring); *Gilchrist v. State,* 97 Md.App. 55, 78, 627 A.2d 44, 55 (1993) (Wilner, J., concurring); *People v. Bolling,* 79 N.Y.2d 317, 582 N.Y.S.2d 950, 591 N.E.2d 1136, 1145–46 (1992); Morris B. Hoffman, *Peremptory Challenges Should Be Abolished: A Trial Judge's Perspective,* 64 U. Chi. L.Rev. 809 (1997). I have been unable to find any state that has followed the call.

tion to develop a rational basis for excluding a potential juror, whether for cause or by peremptory challenges.

I point out that, in expanding the voir dire process, I in no way endorse unduly prolonging the jury selection process or permitting abuses known to the trial lawyer. Voir dire should not be used to make a point to the jury or to indoctrinate potential jurors, but rather to gain information to aid in the exercise of challenges. The regulation of voir dire is entrusted to the sound discretion of the trial judge, and the trial judge should reasonably supervise and control the voir dire process to ensure against abuses.

Judge HARRELL has authorized me to state that he joins in this concurring opinion.

BATTAGLIA, J., dissenting.

For the reasons set forth below, I must respectfully dissent from the majority decision in this case which reverses a conviction and remands the case for a new trial based upon the failure to ask a *voir dire* question which was not specifically related to the charge of possession and distribution of cocaine with which the defendant was indicted.

I find no abuse of discretion in this case where the trial court refused to ask the venire panel if anyone harbors "strong feelings regarding violations of the narcotics laws." Basically, any response would not have yielded specific information sufficient to form the basis of a disqualification for cause. *See Dingle v. State,* 361 Md. 1, 15, 759 A.2d 819, 826 (2000)(explaining that in order to be meaningful, *voir dire* "must uncover more than 'the jurors' bottom line conclusions [to broad questions], which do not in themselves reveal automatically disqualifying biases as to their ability fairly and accurately to decide the case, and, indeed, which do not elucidate the bases for those conclusions . . . .")(quoting *Bowie v. State,* 324 Md. 1, 23, 595 A.2d 448, 459 (1991)). As a result, the majority is blurring the historical distinction between the use of *voir dire* as a basis for strikes for cause and its use as a basis for exercising peremptory challenges.

In Maryland, the trial court conducts *voir dire* examination to determine whether possible cause exists to disqualify a juror on the basis of bias or prejudice. *See Chernock v. State,* 203 Md. 147, 150, 99 A.2d 748, 749 (1953). In *Davis v. State,* 333 Md. 27, 633 A.2d 867 (1993), we explained the limited nature of Maryland's *voir dire* process, that being to secure information to strike for cause:

> This Court initially adopted the rules concerning the scope of *voir dire* because allowing more extensive inquiry would unduly tax the efficiency of Maryland's judicial system. Although some litigants might benefit from broader mandatory *voir dire,* a greater number of citizens would be hindered due to the accompanying decline in their ability to gain prompt resolution of their litigation.

333 Md. at 42, 633 A.2d at 874. We reiterated the scope of Maryland's *voir dire* process in *Dingle:*

> To be sure, Maryland has adopted, and continues to adhere to, limited *voir dire.* It is also well settled that the trial court has broad discretion in the conduct of *voir dire,* most especially with regard to the scope and the form of the questions propounded, and that it need not make any particular inquiry of the prospective jurors unless that inquiry is directed toward revealing cause for disqualification.

361 Md. at 13, 759 A.2d at 826 (internal citations omitted). Thus, "[q]uestions not directed to a specific ground for disqualification but which are speculative, inquisitorial, catechising or 'fishing', asked in aid of deciding on peremptory challenges, may be refused in the discretion of the court, even though it would not have been error to have asked them." *McGee v. State,* 219 Md. 53, 58, 146 A.2d 194, 196 (1959); *see Whittemore v. State,* 151 Md. 309, 315–16, 134 A. 322, 324 (1926) (trial court properly exercised its discretion in excluding questioning concerning the juror's age because the questions were "for no specified purpose, and apparently with no question of disqualification in mind, but were merely beginning a process of examining at large, in order to form impressions and preferences, which, while they might properly be

made the ground for peremptory challenges, would not test the eligibility of the jurymen").

Thomas's requested question would not have elicited specific bias relevant to the charge of possession and distribution of cocaine. To ask about "feelings" about "violations of narcotics laws" is so broad as to elicit responses about marijuana possession and misuse of prescription drugs, among many others. It would be similar to asking in a case involving driving while intoxicated whether the jury had any "feelings" about violations of the motor vehicle laws and expecting to elicit information sufficient to strike for cause.

In reaching its decision here today, the majority relies heavily on the Court's earlier decision in *Casey v. Roman Catholic Archbishop of Baltimore*, 217 Md. 595, 143 A.2d 627 (1958). *See* Maj. op. at 215–16. The *Casey* decision, however, is inapposite to the majority's position.

In *Casey*, the defendant, Roman Catholic Archbishop of Baltimore, requested that the trial court propound two specific questions directly related to the Roman Catholic Church and the particular parish where the plaintiff was injured, and asked if a verdict was rendered against the defendant, could the jurors "fairly and impartially assess damages in the case in the same manner as if the defendant were a regular corporation or a natural person?" *Casey*, 217 Md. at 604, 143 A.2d at 630. The trial court declined the defendant's request and decided to simply inform the panel that one of the parties was a "religious corporation,"—a term laden with ambiguities—and to ask whether due to "religious scruples or any other reason" the jurors would not be able to conduct a fair and impartial trial. *Id.*

The questions requested by the church were directed toward eliciting specific information about religious bias aimed at the Roman Catholic Church and bearing directly on the trial at issue. Conversely, the question actually propounded by the trial court in *Casey* neglected to frame the bias question with precision.

I believe that the question requested by Thomas in the case at bar is more akin to the nebulous question posed by the trial

court in *Casey*, which we concluded "was not sufficient to determine possible cause for disqualification by reason of bias or prejudice or otherwise." *Id.* at 606, 143 A.2d at 631. As in *Casey*, the question requested by Thomas "was in a form so general that it is likely it [would] not sufficiently indicate to the panel of jurors what possible bias or prejudice was being probed." *Id.* Thomas's requested question lends itself to triggering a cerebral fishing expedition in an attempt for the venire panel to look within themselves to ascertain the possible meaning of what it means to be prejudiced by "strong feelings regarding violations of the narcotics laws."

I do not take exception to the notion that if requested and not otherwise adequately addressed in the questioning, the trial court should query the panel about their attitude or mental state with regard to the specific crime involved. *See Casey*, 217 Md. at 605, 143 A.2d at 631 (stating, "it is also well settled that parties to an action triable before a jury have a *right* to have questions propounded to prospective jurors on their *voir dire*, which are directed to a specific cause for disqualification, and failure to allow such questions is an abuse of discretion constituting reversible error")(emphasis in original). To be sure, the trial court must be free to exercise discretion in examining venire panels concerning fairness and impartiality. Any requirement that the trial court pose amorphous and ill-defined *voir dire* questions such as the question proposed by Thomas in the case at bar would undermine the long-held discretionary function of the trial judge in the *voir dire* process. As we explained in *Davis:*

> where the parties *identify* an area of potential bias and *properly request voir dire* questions designed to ascertain jurors whose bias could interfere with their ability to fairly and impartially decide the issues, then the trial judge has an obligation to ask those questions of the venire panel ... *Those voir dire questions, however, should be framed so as to identify potential jurors with biases which are cause for disqualification, rather than merely identifying potential jurors with attitudes or associations which might facilitate the exercise of peremptory challenges.*

*Davis,* 333 Md. at 47, 633 A.2d at 877 (emphasis added); *Cf. Gilchrist v. State,* 97 Md.App. 55, 78, 627 A.2d 44, 55 (1993)(Wilner, C.J., concurring) (explaining his belief that peremptory challenges should be eliminated as a matter of public policy because "precious judicial time and resources are being sidetracked.")

Therefore, I conclude that in the case *sub judice* the trial judge properly exercised his discretion in disallowing Thomas's proposed inquiry into the panel members' "feelings" concerning "violations of the narcotics laws." Such an inquiry would have done nothing more than to facilitate Thomas's exercise of peremptory challenges. *See Davis,* 333 Md. at 47, 633 A.2d at 877. If the majority is desirous of expanding Maryland's traditionally conservative *voir dire* process to include eliciting information to aid the attorneys in exercising peremptory challenges, then it should do so explicitly and without reservation. Until such time as that happens, litigants will be charged with the difficult task of determining the limitations of the majority opinion in developing *voir dire* questions and trial courts will be left to speculate as to whether the *voir dire* really is designed to support strikes for cause or peremptory challenges.