*State of Maryland v. Arnold Davis*, No. 1898, September Term 2019, Submitted on Brief: September 14, 2020

**INEFFECTIVE ASSISTANCE OF COUNSEL - VOIR DIRE.**

Whether defense counsel's failure to object to a compound strong feelings question constitutes ineffective assistance of counsel is determined by the state of the law at the time the question is posed.

Circuit Court for Wicomico County
Case No. 22-K-07-000196

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1898

September Term, 2019

_____

STATE OF MARYLAND

v.

ARNOLD DAVIS

_____

Leahy,
Gould,
Moylan, Charles E.
  (Senior Judge, Specially Assigned),


JJ.
_____

Opinion by Gould, J.
_____

Filed: January 28, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In 2007, Arnold Davis, appellee, was convicted by a jury sitting in the Circuit Court for Wicomico County of several offenses related to an armed home invasion in Salisbury, Maryland.[1]  In 2019, the circuit court granted Mr. Davis's motion for post-conviction relief, finding his counsel ineffective and awarding him a new trial.  The State appeals from that decision, asking: "Did the [circuit] court err in finding [Mr. Davis's] trial counsel ineffective for not objecting to a compound voir dire question addressing potential jurors' 'strong emotional feelings' regarding the crimes of attempted murder and kidnapping?"  For the reasons below, we agree with the State that the circuit court erred and reverse.

## FACTS AND PROCEDURAL BACKGROUND

During voir dire, the circuit court asked the venire panel the following question:

> The charges, as you may have heard, involve an allegation of attempted murder.  Does the nature – and also kidnapping.  Do the nature of the charges themselves, just alone, stir up such strong emotional feelings in you that you cannot be a fair and impartial juror in this case?

Mr. Davis's counsel did not object to this question, and no prospective juror responded. Mr. Davis also did not challenge the propriety of the voir dire question in his direct appeal.

Ten years after his conviction and sentencing, Mr. Davis filed a motion for post-conviction relief, arguing that he was entitled to a new trial.  Citing *Dingle v. State*, 361

---

[1] Specifically, Mr. Davis was convicted of first-degree assault; four counts of second-degree assault; five counts of reckless endangerment; and two counts each of use of a handgun in the commission of a felony or a crime of violence and wearing, carrying, or transporting a handgun.  He was sentenced to a total of 75 years and one day of incarceration, which was later modified to 62 years and one day.  We affirmed his convictions on direct appeal.  *See Davis v. State*, No. 2158, Sept. Term, 2007 (filed March 20, 2009), *cert. denied*, 409 Md. 414 (2009).

Md. 1 (2000), he argued that his trial counsel's performance was deficient because his counsel did not object to the compound "feelings" voir dire question recited above. The State responded that Mr. Davis's trial counsel did not perform deficiently because the voir dire question was proper when Mr. Davis was tried, and therefore, the circuit court did not need to address prejudice.

A hearing on the motion was held on May 24, 2019. Mr. Davis's trial counsel was the sole witness. He testified that he was aware of the Court of Appeals' decision in *Dingle*. As to why he did not object to the trial court's voir dire question, he responded: "[T]here are instances where I know a question is a *Dingle* question and I make an affirmative decision not to object. I don't recall in this case so I would be speculating [as to why I did not object]." He explained why he sometimes intentionally did not object, stating: "Depends on the jury, it depends on the charge, it depends on sort of how the trial is proceeding[,] . . . [whether] I [] believe it is dispositive or significant[, or] I'm more interested in other questions." He testified, "I can't think of a reason why I wouldn't object to it in this case" and could not recall whether he had a strategy behind not objecting. He candidly testified on cross-examination that for him, not objecting to a voir dire question is sometimes a trial tactic and sometimes the result of inattention.

Following the trial attorney's testimony and the parties' arguments, the circuit court took the matter under advisement. In a subsequent written opinion, the court agreed with Mr. Davis's argument that his trial counsel was constitutionally ineffective. The court concluded that (1) the question was improper under *Dingle*; (2) the trial counsel's failure

2

to object amounted to deficient performance; and (3) prejudice was presumed under *Wright v. State*, 411 Md. 503 (2009).

## DISCUSSION

The State argues on appeal that the circuit court erred in concluding that Mr. Davis's trial counsel was constitutionally ineffective. The State argues that trial counsel's performance was not deficient for not objecting to the voir dire question at issue because, at the time of Mr. Davis's trial, Maryland law allowed compound voir dire questions about "the state of mind or attitude" of prospective jurors about the charged crimes. The State contends that it was not until the Court of Appeals decided *Pearson v. State*, 437 Md. 350 (2014), that such questions were deemed improper. The State also argues that the circuit court erred in presuming prejudice because Mr. Davis was required to prove actual prejudice, which he did not. Mr. Davis responds that the circuit court did not err in finding his trial counsel ineffective for failing to object to an improper voir dire question, and the court correctly found the error created a presumption of prejudice.

### I.

### STANDARD OF REVIEW

"[R]eview of a post[-]conviction court's findings regarding ineffective assistance of counsel is a mixed question of law and fact." *Newton v. State*, 455 Md. 341, 351 (2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 665 (2018) (citation omitted). An appellate court will not disturb the factual findings of a trial court, unless those findings are clearly erroneous. *Arrington v. State*, 411 Md. 524, 551 (2009). We review a trial court's conclusions of law, including its conclusion as to whether the petitioner's counsel was

3

ineffective, without deference, making an independent determination of the relevant law and its application to the facts. *Ramirez v. State*, 464 Md. 532, 560 (2019) (citation omitted), *cert. denied*, ___ U.S. ___, 140 S. Ct. 1134 (2020).

## II.

## ANALYSIS

The Sixth Amendment to the United States Constitution grants criminal defendants the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). In *Strickland*, the Supreme Court set out a two-prong test for reviewing ineffective assistance of counsel claims. *Id.* at 687. The first prong is known as "the performance prong[,]" and the second prong is known as "the prejudice prong[.]" *Newton*, 455 Md. at 356 (citations omitted).

As to the first prong, the petitioner must show that trial counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Specifically, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The Supreme Court explained:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

4

*Id.* at 689-90 (cleaned up). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

As to the second prong, the petitioner must also show that counsel's deficient performance prejudiced petitioner's defense. *Id.* at 687. This requires a showing of "either (1) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; or (2) that the result of the proceeding was fundamentally unfair or unreliable." *Bailey v. State*, 464 Md. 685, 703 (2019) (cleaned up). The Court of Appeals has explained: "[w]e have interpreted *reasonable probability* to mean there was a substantial or significant possibility that the verdict . . . would have been affected." *State v. Syed*, 463 Md. 60, 86-87 (cleaned up), *cert. denied*, ___ U.S. ___, 140 S. Ct. 562 (2019). In *Strickland*, the Supreme Court explained how to assess prejudice:

> a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the [petitioner] has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

466 U.S. at 695-96.

Applying the foregoing principles of law to the facts of this case, we begin with the observation that Mr. Davis's trial occurred seven years after the 2000 decision in *Dingle*

5

and seven years before the 2014 decision in *Pearson v. State*. The law on compound jury selection questions evolved over this 14-year period. Pinpointing Mr. Davis's trial on this continuum is critical to the central issue before us: whether Mr. Davis's trial counsel's failure to object to the compound strong feelings question deprived Mr. Davis of his Sixth Amendment right to the effective assistance of counsel.

In *Dingle*, the Court of Appeals held that a trial court erred when it asked, over defense counsel's objection, several two-part voir dire questions concerning: (1) whether prospective jurors had certain "experiences or associations"; and (2) whether those experiences or associations would affect their ability to be fair and impartial.[2] 361 Md. at 3-4, 21 (footnote omitted). The trial court had instructed the venire that they need not respond to the two-part questions unless they answered both parts in the affirmative. *Id.* at 4 (footnote omitted). In reversing, the Court of Appeals explained:

> By upholding a voir dire inquiry in which a venire person is required to respond only if his or her answer is in the affirmative to both parts of a question directed at discovering the venire person['s] experiences and associations and their effect on that venire person's qualification to serve as a juror, and producing information only about those who respond, the holding of the Court of Special Appeals endorses a voir dire process that allows, if not requires, the individual venire person to decide his or her ability to be fair and impartial. Moreover, in those cases where the venire person has had the questioned experience or association, but believes he or she can be fair, the procedure followed in this case shifts from the trial judge to the venire responsibility to decide juror bias. Without information bearing on the relevant experiences or associations of the affected individual venire persons

---

[2] The voir dire questions at issue in *Dingle*, asked whether the prospective jurors: (1) had been the victim of a crime, (2) had been accused of a crime, (3) had been a witness in a criminal case, (4) had served as a juror in criminal case, (5) had belonged to a victim's rights group, (6) had studied the law, or (7) were associated with members of law enforcement. 361 Md. at 4 n.4.

who were not required to respond, the court simply does not have the ability, and, therefore, is unable to evaluate whether such persons are capable of conducting themselves impartially. Moreover, the petitioner is deprived of the ability to challenge any of those persons for cause. Rather than advancing the purpose of voir dire, the form of the challenged inquiries in this case distorts and frustrates it.

*Id.* at 21.

Less than a year after *Dingle* was decided, in *Thomas v. State*, 139 Md. App. 188 (2001), we were confronted with a slightly different compound question that the trial court, over the defendant's objection, had refused to ask the prospective jurors. The question at issue was: "Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged?" *Id.* at 195. We surveyed the relevant caselaw that included an extensive discussion of the then-recent *Dingle* decision, concluded that the trial court erred in refusing the question, and reversed the judgments. *See id.* at 195-202, 212. We pointed out that although the form of the question violated *Dingle*, we did not "fault" the defendant for proposing the question in that manner because the trial had occurred prior to the *Dingle* decision. *Id.* at 202. And, we instructed the trial court to break up the compound question into two parts, stating:

The first question should identify any jurors who harbor strong feelings about narcotics or the laws governing narcotics. Then, the trial court should individually ask those members of the venire who responded affirmatively follow-up questions regarding their ability to be fair and impartial despite their strong feelings.

7

*Id.* at 202. As of July 2, 2001—the date we issued our decision in *Thomas*—the state of Maryland law appeared to be that *Dingle* did apply to a "strong feelings" compound question. But not for long.

The Court of Appeals granted the State's petition for a writ of certiorari to review our decision in *Thomas*. *State v. Thomas*, 369 Md. 202 (2002). The Court agreed with our conclusion that the trial court abused its discretion in refusing to ask this question. *Id.* at 214. The Court also took note of our "guidance" to the trial court that the question should be broken into two parts. *Id.* at 204 n.1. On that issue, the Court disagreed with us, stating:

> We do not share the intermediate appellate court's interpretation of *Dingle* as it relates to this case and, thus, we do not believe the guidance it offers is necessary. When the inquiry is into the state of mind or attitude of the venire with regard to a particular crime or category of crimes, it is appropriate to phrase the question as was done in this case.

*Id.* Thus, as of May 10, 2002—the date the Court of Appeals issued its decision in *Thomas*—the state of the law appeared to be that *Dingle* did *not* apply to a "strong feelings" compound question.

The Court of Appeals affirmed its *Thomas* holding three months later in *Sweet v. State*, 371 Md. 1 (2002). In *Sweet*, the petitioner had asked the trial court to give the following voir dire question: "Do the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?" 371 Md. at 9 (quotations omitted). Although the question had two-parts, the Court held that its decision was controlled by *Thomas* and concluded that "the trial court abused its discretion in failing to pose petitioner's requested voir dire question, and petitioner is entitled to a new trial." *Id.*

8

at 10 (italics omitted).  The propriety of the form of the question was not discussed in *Sweet*.[3]

We subsequently followed the *Thomas* holding in *Baker v. State*, 157 Md. App. 600 (2004) and *Singfield v. State*, 172 Md. App. 168 (2006).  In *Baker*, citing *Thomas* and *Sweet*, we held that the trial court erred in refusing to ask the venire the following question: "[D]o you have any bias or prejudice concerning handguns which would prevent you from fairly weighing the evidence in this case?"  *Baker*, 147 Md. App. at 612.  In *Singfield*, citing *Thomas*, *Sweet*, and *Baker*, we held that the trial court erred in refusing to ask the venire the following question:  "Does any member of the jury panel feel that the nature of this case would make it difficult or impossible for you to render a fair and impartial verdict, specifically because this case involves a murder with a handgun?"  *Singfield*, 172 Md. App. at 170 n.2, 180-81 (italics omitted).  The propriety of the compound form of the question was not before us in either case.

Mr. Davis was tried in the year following *Singfield*, on August 27-28, 2007.

Four years later, in *State v. Shim*, 418 Md. 37, 39 (2011), the Court of Appeals reasserted its *Thomas* and *Sweet* position, holding that the trial court had abused its discretion in refusing "to ask whether the venire panel harbored 'such strong feelings concerning the violent death of another human being' that they would be 'unable to render a fair and impartial verdict based solely on the evidence presented[.]'"  The Court stated:

---

[3] Perhaps that's because the trial in *Sweet* apparently took place before the Court decided *Dingle*.  *See* Maryland Judiciary Case Search, available at http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=86388C&loc=68 &detailLoc=MCCR (last visited Dec. 6, 2020).

"When requested by a defendant, and regardless of the crime, the court should ask the general question, 'Does any member of the jury panel have such strong feelings about [the charges in this case] that it would be difficult for you to fairly and impartially weigh the facts.'" *Id.* at 54. The compound nature of the question was also not addressed by the Court in *Shim*.

That same year, in *Wimbish v. State*, 201 Md. App. 239, 268 (2011), we articulated our understanding of the Court of Appeals' holdings in *Dingle*, *Thomas*, *Sweet*, and *Shim*. There, we held that a trial court did not abuse its discretion in refusing to ask prospective jurors four two-part questions about their "state of mind or attitude" that would prevent them from being fair and impartial. We reasoned:

> Unlike the impermissible questions in *Dingle*, these questions pertained, not to the prospective juror's experiences or associations, but to his "state of mind or attitude," about gangs, race, guns, and appellant, himself. The problem inherent in the *Dingle* questions, as noted, was that those questions allowed a prospective juror, who had had a particular experience or association that might prejudice his views, to withhold that information from the court, thus impermissibly "shift[ing] from the trial judge to the venire responsibility to decide juror bias." *Dingle*, 361 Md. at 21.

> In contrast, the questions at issue, here, asked prospective jurors specifically whether they had any disqualifying biases and highlighted four areas in which such a bias might be present: gangs, race, the right to gun ownership, and appellant, himself. An affirmative answer to one of the questions meant that the prospective juror could not be impartial. Consequently, the prospective juror was not, as in *Dingle*, withholding information that the court required to make its own independent determination of the prospective juror's ability to be impartial. *Id.*

> Like the question in *Thomas*, which addressed the prospective juror's "state of mind or attitude" with respect to a particular crime, these questions did not run afoul of *Dingle*. And, because the questions were permissible, appellant's assertion that his counsel was constitutionally ineffective for failing to object to them is without merit. *See Strickland v. Washington*, 466

10

U.S. 668, 687 (1984) (To prevail on a claim of ineffective assistance of counsel, the [petitioner] must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment.").

*Id.* at 267-68. As of September 29, 2011—the date of our decision in *Wimbish*—it appeared that footnote 1 of the Court of Appeals' opinion in *Thomas* reflected the state of the law on that issue. That is, "[w]hen the inquiry is into the state of mind or attitude of the venire with regard to a particular crime or category of crimes, it is appropriate to phrase the question" as: "Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged?" *Thomas*, 369 Md. at 204 n.1.

Three years later, in *Pearson v. State*, 437 Md. 350 (2014), the Court of Appeals specifically abrogated those portions of *Thomas*, *Sweet*, and *Shim* that permitted two-part "strong feelings" voir dire questions. In *Pearson*, the Court of Appeals held that the trial court had acted properly in not asking the venire whether any prospective juror had ever been a victim of a crime, in part because the trial court had asked the prospective jurors: "Does any member of the panel hold such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts of this trial where narcotics violations have been alleged?" *Id.* at 361 (quotation marks omitted). In addition, the Court of Appeals determined that the phrasing of the two-part "strong feelings" question was improper. *Id.* at 360-61.

11

Before continuing with our discussion of *Pearson*, we pause to recall that in this case, the circuit court found that Mr. Davis received ineffective assistance of counsel by concluding that "the precedent that bound Trial Counsel at the time of [Mr. Davis's] trial came from *Dingle*." But that was not the state of the law when Mr. Davis's case went to trial in 2007. As noted above, just one year after *Dingle*, we too believed that its holding applied to strong feelings questions, so much so that in *Thomas*, we *sua sponte* offered guidance to the trial court to break up the compound question into two separate questions. *Thomas*, 139 Md. App. 188. Yet, the Court of Appeals went out of its way to negate our guidance by telling the trial court that the original, compound phrasing of the question was "appropriate." *Thomas,* 369 Md. at 204 n.1. Because our guidance certainly did not contravene *Dingle*, we see no apparent reason for the Court to have done so other than to guide courts and trial counsel on the scope and reach of *Dingle*.[4]

The Court of Appeals in *Pearson* recognized that its application of *Dingle* to the strong feelings compound questions marked a change in the law from allowing to disallowing compound questions that "shift responsibility to decide a prospective juror's bias from the trial court" to the prospective jurors. *Pearson*, 437 Md. at 363. Thus, the Court of Appeals emphasized that, "[t]o be clear, we amend this Court's holding in *Shim* only in the context of phrasing of the 'strong feelings' voir dire question in *Shim*." *Id.* at 363 (internal citations omitted). Moreover, the Court in *Pearson* made clear that its

---

[4] This likely explains why, in subsequent cases such as *Sweet*, *Baker*, *Singfield*, and *Shim*, the phrasing of the strong feelings questions was not addressed.

holdings applied "prospectively as of the date on which this opinion [was] filed." *Id.* at 370.

Here, the circuit court erred in applying the Court's holding in *Pearson* retroactively to Mr. Davis's trial counsel in 2007, when the state of the law was quite different. Based on the law as it existed at the time of trial, Mr. Davis's trial counsel's failure to object to the two-part "strong feelings" voir dire question was not a deficiency in counsel's defense of Mr. Davis. *See State v. Gross*, 134 Md. App. 528, 553 (2000) ("[C]ounsel is under no duty to anticipate a change in the case law" because trial counsel's performance is judged "upon *the situation as it existed at the time of trial*.") (quoting *State v. Calhoun*, 306 Md. 692, 735 (1986), *aff'd*, 371 Md. 334 (2002) (emphasis added in *Gross*)). Because Mr. Davis failed to satisfy the first *Strickland* prong of his ineffective assistance claim, we need not consider the prejudice prong. *See Newton*, 455 Md. at 356 ("*Strickland* also instructs that courts need not consider the performance prong and the prejudice prong in order, nor do they need to address both prongs in every case.") (citations omitted).

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY REVERSED. COSTS TO BE PAID BY APPELLEE.**