## McGEE *v.* STATE

[No. 74, September Term, 1958.]

54

*Decided February 12, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Sidney Kaplan* for the appellant.

*Charles B. Reeves, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *Norman*

*Polski, Assistant State's Attorney for Baltimore City,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This case involves the shooting by Henry McGee of Elmer Thomas. After his conviction by a jury of murder in the second degree, McGee appealed from a judgment and sentence of ten years and, in this Court, presses contentions as to the insufficiency of the evidence, an error in the charge, and the refusal of the trial judge to ask the jurors on *voir dire* questions requested by him.

Henry McGee, his brother James, and their friend Brown, had an argument in the men's room of a tavern with Tyler, one of a group of friends who were together in the place. Brown claimed Tyler had stepped on his foot. A little later, Tyler and Brown began fighting in the street outside the tavern. Elmer Thomas, a friend of Tyler's, drove up in his automobile and stopped the fight, persuading the McGees and Brown to leave. Thomas' car stalled and his friends, Tyler, Gilbert and Bradford, helped him push it down the street and around the corner where they stopped to seek another friend's car to push theirs. As they stopped, the McGees, who had driven Brown home, drove up behind them to let James McGee out near his home. Gilbert, not recognizing them, asked them to push Thomas' car. They said their dynaflow was bad, and refused. James then got out of the car with a big wrench in his hand. Tyler asked him if he was looking for trouble. At that point Henry McGee got out of the car with a pistol in his hand and, soon thereafter, shot and killed Elmer Thomas.

There was testimony from various witnesses that appellant told everybody to back up, that Thomas, who had stopped the earlier fight, started towards appellant with nothing in his hand but a cigar and that although Tyler was arguing with the McGees because James "drawed a wrench" on him, Thomas was not arguing or fighting with anybody. Appellant claims that Thomas came at him with a heavy stick which he then thought was an iron bar, hit him on the leg,

and drew back and attempted to hit him on the head. He says it was then, in fear of his safety and life, and with his back within a foot of the wall, that he shot in self-defense to keep the crowd "from beating me to death".

We have no doubt that the evidence was sufficient to permit the verdict reached by the jury. The versions of the State and the defense were sharply in contrast, the State contending that appellant shot Thomas without legal excuse or reason, and the defense claiming that the shot was in justifiable self-defense. There was competent testimony from the witness stand (although that of some of the State's witnesses was more favorable to the State than their earlier statements) which was of sufficient probative force to have permitted a finding either way, depending on whom the jury believed. Clearly, the issues of fact were for the jury to determine. *Briley v. State*, 212 Md. 445, 447.

The trial court instructed the jury in the language requested by the appellant as to the law of self-defense—that if Henry McGee "did what any reasonable person would have done under the same circumstances" to defend himself, he was to be found not guilty, "for self-defense is a proper defense in the eyes of the law." The charge told the jury in customary terms that the court's comments on the facts were only "to sharpen the issue of fact" and that these comments and his instructions on the law were not binding, and were merely advisory, since the jury were the judges of both law and facts. He instructed them as to the presumption of innocence, the burden on the State to prove the crime charged beyond a reasonable doubt, the presumption of law that a felonious killing is murder in the second degree, unless the State proves the elements of first degree murder or the accused shows the killing to be manslaughter. The elements of murder and manslaughter were explained fully. In his argument in this Court, appellant did not press his claim that the charge as a whole was erroneous. In his brief he seems to complain only that the court did not instruct, as he asked, that the mere possession of the gun was not alone the cause of homicide, nor did such possession alone make the defendant guilty of the charge of murder. We think there was no prejudicial

error in refusing explicitly to charge what was necessarily clearly implicit in the instructions given. The charge was full and adequate as to the issues before the jury.

The trial judge asked the jury panel on *voir dire*: whether any member was acquainted with the deceased or his family, to which the answer was no; and whether the members were prepared to give both the State and the accused "a fair and impartial trial based on the sworn testimony and the law applicable thereto," to which all answered yes. The judge declined to ask five questions requested by appellant, who duly excepted. These questions were:

1. Do you believe that a man defending his life has a right to use any weapon or weapons at his disposal?
2. Do you believe that possession of a gun makes a man liable for any consequence which the possession of the gun may have?
3. Would the fact that a defendant had illegal possession of a gun prevent you from finding him "Not Guilty" of a homicide which involved said gun, if all or a reasonable amount of the other evidence brought before you indicated his innocence?
4. Are you willing to resolve all reasonable doubt in favor of the accused?
5. Do you understand that there is no distinction between the prosecuting attorney and the defense counsel, merely because the prosecuting attorney bears an official title, and do you further understand that both lawyers are entitled to an equal and respectful hearing?

It is settled in Maryland that in examination of jurors on their *voir dire,* the court may frame its own questions and not permit cross-examination by counsel, that the extent of the examination rests in the sound discretion of the court, and that the purpose of the inquiry is to ascertain "the existence of cause for disqualification and for no other purpose." *Adams v. State,* 200 Md. 133, 140, and cases cited; *Bryant v. State,* 207 Md. 565. Questions not directed to a specific ground for disqualification but which are speculative, inquisitorial, catechising or "fishing", asked in aid of deciding

on peremptory challenges, may be refused in the discretion of the court, even though it would not have been error to have asked them. *Whittemore v. State,* 151 Md. 309, 311-316; *Handy v. State,* 101 Md. 39; *Gillespie v. State,* 92 Md. 171, 174; *Emery v. F. P. Asher, Jr. & Sons, Inc.,* 196 Md. 1, 6-9; Cf. *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 605.

Along these lines it has generally been held that there is no abuse of discretion in refusing to ask a juror his opinion on a question of law or how he would act or decide in certain contingencies, or upon a certain state of evidence. *People v. Conklin* (N. Y.), 67 N. E. 624, 626; *Ryan v. State* (Wis.), 92 N. W. 271, 274; *State v. Bauer* (Minn.), 249 N. W. 40, 41; *State v. Turley* (Vt.), 88 A. 562, 564; *Commonwealth v. Moon* (Pa.), 132 A. 2d 224; *State v. Huffman* (Ohio), 99 N. E. 295, 296. The reasons for this have been said to be that the law governing the case is for the court to decide, and that questions as to a contingency or upon a certain assumed state of proof, may be, and usually are, incomplete and do not require the taking into account of all the facts that the testimony may adduce and, so, if answered, may tend to fix a juror's views as to an issue on fragmentary, partial or hypothetical assumptions of fact. In Maryland the jury, in criminal cases, is the judge of both law and fact; nevertheless, the law contemplates that the jury is to decide the controlling law after it has heard and considered all the facts and after the judge has given an advisory instruction (if one is given) as to what the law is. Advisory though the instruction is, its significance and importance are shown by the fact that for prejudicial error in it, duly excepted to, the case must be reversed.

We think the rationale of the cases in other states makes them persuasive and applicable here, and that the trial court did not abuse his discretion in refusing to ask the first four questions, which either called for the juror's opinion on the law or how he would act or react to specified contingencies. The last question would seem to have been properly refused under *Bryant v. State, supra* (proper not to ask if juror had been a client of the state's attorney), and *Emery v. J. P.*

*Asher, Jr. & Sons, Inc., supra* (proper not to ask whether jurors' knew plaintiff's counsel or defendant's counsel).

It is not said or intimated that any juror who sat had in fact bias or prejudice which prevented his giving the accused a fair and impartial trial. We find no reversible error in the record, and the judgment will be affirmed.

*Judgment affirmed, with costs.*