884 A.2d 758

**Raymond Alan CURTIN**

v.

**STATE of Maryland.**

**No. 0523, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Oct. 7, 2005.

Natalie Kraner (Jennifer P. Lyman, Community Legal Clinics, on brief), Washington, DC, for appellant.

Sarah Page Pritzlaff (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., BARBERA, DANIEL M. LONG, (Specially Assigned) JJ.

LONG, J.

On December 17, 2003, a jury sitting in the Circuit Court for Prince George's County, convicted Raymond Curtin, appellant, of armed robbery and several related offenses, including use of a handgun in the commission of a crime of violence. On

February 19, 2004, he was sentenced to twenty-five years without the possibility of parole and an additional five years of supervised probation with drug and alcohol counseling. On March 10, 2004, appellant moved for reconsideration of his sentence, requesting a hearing in order to demonstrate his rehabilitative progress. This motion was denied, and appellant filed a timely notice of appeal on March 15, 2004.

In his appeal, appellant contends 1) the trial court committed reversible error when it refused to ask his proposed "use of a handgun" voir dire question; 2) there was insufficient evidence to establish the use of a dangerous weapon, handgun, or firearm; 3) the trial court abused its discretion by refusing to declare a mistrial after approximately two days of deliberations; and 4) multiple sentences for the handgun charges violate the double jeopardy clause and thereby render appellant's sentence unconstitutional. Appellant requests that the Court reverse the unconstitutional convictions and grant a new trial or, in the alternative, conduct a new sentencing hearing for all the remaining offenses.

## I.

### Refusal to Ask the Proposed Use of a Handgun Voir Dire Question

Appellant's proposed voir dire question asked: "Does anyone have strong feelings concerning the use of handguns that would not allow them [sic] to be fair and impartial?" Arguing that the trial court's refusal to ask this question constituted a reversible error that requires a new trial, appellant emphasizes that in *Baker v. State*, 157 Md.App. 600, 853 A.2d 796 (2004), we considered a proposed jury voir dire instruction addressing handgun bias, and determined that the trial court abused its discretion when it refused to ask whether any member of the jury panel had any bias or prejudice concerning handguns.

*Baker* involved a defendant who was defending assault and "use of a handgun" charges on the ground that he had acted in self-defense and/or in defense of his girlfriend. *Id.* at 613, 853

A.2d 796. Because the evidence would show that the defendant shot an unarmed man, the defense requested that the court propound several voir dire questions, including "do you have any bias or prejudice concerning handguns which would prevent you from fairly weighing the evidence in this case?" *Id.* at 608, 853 A.2d 796. Over Baker's objection, the trial court denied that request. *Id.* at 610, 853 A.2d 796. Recognizing that a prospective juror's bias may be based on the nature of the crime with which the defendant is charged, we determined that the trial court should have asked whether any prospective juror had strong feelings about handguns that would have affected his or her ability to weigh the issues fairly. *Id.* at 613, 853 A.2d 796 (citing *Sweet v. State,* 371 Md. 1, 806 A.2d 265 (2002), and *State v. Thomas,* 369 Md. 202, 798 A.2d 566 (2002)).

Appellant contends that his present appeal fits squarely within our holding in *Baker,* and that he is thereby entitled to a reversal of his conviction. According to appellant, his proposed voir dire question was designed to detect potential bias towards the nature of the crime and to uncover potential cause for disqualification. Further, appellant argues that because the proposed question was succinct, direct, and went "straight to the heart of jury disqualification," the trial court abused its discretion when it refused to ask this question.

The State, on the other hand, contends that the trial court properly exercised its discretion in refusing appellant's request that the "handgun bias" question be asked on voir dire. This argument is founded on the premise that, under the particular circumstances of this case, the fact that a handgun was used in the commission of the crime is not sufficient basis to require the trial judge to elicit possible juror bias regarding handguns. The State also argues that a proposed voir dire question is not mandatory unless the question is directly relevant to a potential bias that is particular to the defendant's case, or is based upon the nature of the crime with which the defendant is charged. According to the State, this case is distinguishable from *Baker,* a case in which the jurors were presented with the issues of self-defense and the reasonable-

ness of the use of a gun. The State asks us to hold that, because this case does not present the issue of whether the use of a handgun was reasonable under the circumstances, the voir dire question requested by appellant was not reasonably likely to identify jurors who could be fair and impartial.

In Maryland, the overarching purpose of voir dire in a criminal case is to ensure a fair and impartial jury. *Boyd v. State*, 341 Md. 431, 435, 671 A.2d 33 (1996). The purpose of voir dire examination, therefore, is to exclude from the venire potential jurors for whom there exists cause for disqualification, so the jury that remains is capable of deciding the matter before it based solely on the facts presented, and uninfluenced by extraneous considerations. *Hill v. State*, 339 Md. 275, 279, 661 A.2d 1164 (1995). If there is any likelihood that some prejudice is in the juror's mind that will even subconsciously affect his or her decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. *Brown v. State*, 220 Md. 29, 35, 150 A.2d 895 (1959). The proper focus is on the venire person's state of mind and whether there is some bias, prejudice, or preconception. *State v. Thomas*, 369 Md. 202, 210, 798 A.2d 566 (2002). As a result, the defendant is entitled to have the trial judge ask a voir dire question aimed at uncovering a venire person's bias arising out of the nature of the crime with which the defendant is charged. *Id.* at 214, 798 A.2d 566 (citing *Alexander v. R.D. Grier & Sons Co.*, 181 Md. 415, 419, 30 A.2d 757 (1943)).

At the same time, however, the scope of voir dire and the form of questions propounded are firmly within the discretion of the trial judge. *Davis v. State*, 333 Md. 27, 34, 633 A.2d 867 (1993). Questions which are not directed towards a specific ground for disqualification, but instead are "speculative, inquisitorial, catechising, or 'fishing,' asked in the aid of deciding on peremptory challenges, may be refused in the discretion of the court, even though it would not have been error to have asked them." *Id.* at 34–35, 633 A.2d 867 (quoting *McGee v. State*, 219 Md. 53, 58–59, 146 A.2d 194

(1959)). This Court has identified areas of mandatory inquiry when conducting voir dire: (1) racial, ethnic, and cultural bias; (2) religious bias; (3) predisposition as to the use of circumstantial evidence in capital cases; and (4) placement of undue weight on police officer credibility. *Uzzle v. State*, 152 Md. App. 548, 562, 832 A.2d 869 (2003). Any other inquiries should not be peripheral, but should go directly to the potential bias that would be a basis for the prospective juror's disqualification. *Id.*

Since appellant's proposed voir dire was not within the mandatory areas of inquiry, the trial court was required to assess whether there was a reasonable likelihood that the proposed question would have revealed a basis for disqualification. *Id.* at 560, 832 A.2d 869. When making this determination, the trial court should ask "whether a proposed inquiry is reasonably likely to reveal disqualifying partiality or bias," and should weigh "the expenditure of time and resources in the pursuit of the reason for the response to a proposed voir dire question against the likelihood that pursuing the reason for the response will reveal bias or partiality." *Id.* at 560–61, 832 A.2d 869 (citing *Perry v. State*, 344 Md. 204, 220, 686 A.2d 274 (1996)). The trial court retains broad discretion through this process, and it need not make any particular inquiry of the prospective jurors unless that inquiry is directed toward revealing cause for disqualification. *Dingle v. State*, 361 Md. 1, 8, 759 A.2d 819 (2000).

Here, appellant was charged with multiple counts of armed robbery, use of a handgun in the commission of a crime of violence, and assault. The charges arose from an incident where, according to the State's evidence, appellant and an accomplice entered a bank armed with a gun. They told everyone to "get down," jumped over the bank teller's station, and proceeded to rob the bank. There was no evidence presented at trial that the gun was ever fired. Appellant's defenses were based on theories suggesting that appellant was not a participant in the bank robbery or, alternatively, that there was no evidence that a real gun was in fact used.

Under these circumstances, we are not persuaded that the trial court abused its discretion in refusing to ask appellant's proposed voir dire question regarding attitudes of potential jurors toward guns.

In *Baker*, jurors were required to consider (1) whether the defendant actually believed he was in immediate danger, and, if this belief was reasonable, (2) whether, by discharging his gun, the defendant used no more force than was reasonably necessary. Under those circumstances, a juror who believed that use of a handgun is never appropriate would not be able to give fair and impartial consideration to Baker's self-defense argument. At the same time, a juror with strong feelings in favor of handguns might have a "shoot first, ask questions later" attitude that would unfairly prejudice the trial process. Therefore, under the circumstances in *Baker*, and in light of the reasonable use of force argument Baker raised in his defense, a juror's strong feelings about the use of handguns was an essential area of inquiry.

In this case, however, potential juror bias about handguns does not go so directly to the nature of the crime. Appellant was accused of robbing a bank with an accomplice who was brandishing a gun. Unlike the situation in *Baker*, no analysis or weighing of issues pertaining to the gun was required by jurors in this case, other than accepting or rejecting the State's evidence demonstrating that a gun was used in the commission of the crime. The proposition that a juror's strong feelings for or against handguns would necessarily preclude him or her from fairly weighing the evidence in this case—where there was clearly no question relating to the "reasonableness" or "justifiableness" of the use of the gun under the circumstances—is based upon a transcendental line of reasoning with which we disagree.

*Baker* makes clear that a proposed voir dire question should not be probing or abstract, but should directly address potential jurors' biases, prejudices, and ability to weigh the issues fairly. The inquiry should focus on the venire person's ability to render an impartial verdict based solely on the evidence

presented. Appellant's proposed voir dire question did not directly address a juror's ability to weigh the issues fairly or render an impartial verdict in this case. Given the nature of the charges against appellant, a juror who had strong feelings for or against handguns could nonetheless be fair and impartial.

Additionally, after balancing the judicial interest of probing into the likelihood of uncovering disqualifying juror partiality or bias with the interests of judicial efficiency and preservation of a court's limited resources, we are troubled by the precedential consequences of expanding our holding in *Baker* to effectively require a court to ask whether any prospective juror has "strong feelings on handguns" in every case in which the jury will receive evidence that a handgun was used in the commission of a crime. Accordingly, we conclude that the trial court did not err in declining to give appellant's proposed voir dire question asking whether any potential juror had strong feelings concerning the use of handguns that would make him or her unable to render a fair and impartial verdict based on the evidence.

## II.

### Sufficiency of Evidence to Establish Use of a Dangerous Weapon, Handgun, or Firearm

Appellant contends that there was insufficient evidence to establish the use of a dangerous weapon, handgun, or firearm in this case. Appellant's argument is centered on the premise that there was insufficient evidence as a matter of law to establish that a "real" gun was used in commission of the robbery. Without a sufficient showing by the State that the gun was "real," appellant claims the gun could have been a "toy" gun, and that his convictions for armed robbery, use of a handgun in the commission of a crime of violence, and first degree assault cannot stand.

The State, on the other hand, notes that no evidence was ever presented at trial suggesting the gun was not "real," and, to the contrary, seven witnesses testified that they saw a

"gun." The State attempts to substantiate this contention with the trial testimony of Major Thomas Connolly, an off-duty police officer who witnessed the robbery while in progress, who stated he saw a "dark colored semi-automatic handgun, large frame type of weapon," and that what he saw was "definitely a handgun." Additionally, the State contends that photographic evidence taken from the bank's security tape of a man holding what appears to be a "real" gun, and in the context of a bank robbery, is sufficient to support the conclusion that there was in fact a "real" gun.

After considering these arguments, we are persuaded that there was sufficient evidence regarding a handgun to support that element in appellant's convictions for armed robbery, use of a handgun in the commission of a crime of violence, and first degree assault. We have considered and upheld numerous convictions where no tangible evidence was presented at trial establishing the use of a handgun, and it is well settled that circumstantial evidence alone will often suffice. For example, in *Couplin v. State,* 37 Md.App. 567, 575–576, 378 A.2d 197 (1977), a witness described the weapon in question as a "handgun" and that the gun "had two barrels." This witness' testimony was later supported by a police officer, who stated that the witness told him that her assailant was "armed with a small pistol." *Id.* at 576, 378 A.2d 197. While the actual weapon was never recovered, we determined the circumstantial evidence was sufficient to sustain the conviction of the handgun offense in question. *Id.* at 578, 378 A.2d 197. We revisited the issue in *Couplin* in *Brown v. State,* 64 Md.App. 324, 337, 494 A.2d 999 (1985), where the actual weapon used in a robbery was not recovered, but a police officer's testimony that the weapon was a "detective type special" .38 caliber revolver and "the same as the type I was carrying myself" was held to be sufficient to uphold the accused's handgun convictions. More recently, in *Mangum v. State,* 342 Md. 392, 676 A.2d 80 (1996), the Court of Appeals considered the use of circumstantial evidence to satisfy the "operable" requirement of the accused's handgun charge. Despite the fact the weapon was never recovered, the Court held

that circumstantial evidence may be used to prove the operability of a weapon beyond a reasonable doubt. *Id.* at 400, 676 A.2d 80.

In the present case, there is sufficient circumstantial evidence to support the handgun elements in appellant's convictions. At trial, bank employees presented testimony including that one of the two masked men entering the bank had a gun, that this same man said he had a gun, and that the object he was holding and pointing at their faces looked like a gun. These accounts of the robbery were corroborated by Major Connolly's testimony that he saw "a dark colored semi-automatic handgun, a large frame type of weapon," and that "it was definitely a handgun." Further, the bank's video surveillance taken on the day of the shooting and admitted into evidence at trial revealed footage of the assailant holding an object that appears to be a gun. After considering the cumulative effect of the evidence presented at trial, we are persuaded this evidence was sufficient to support a finding that a "real" gun was involved in this crime, and that this evidence may be used to prove the "handgun" elements in the charges against appellant beyond a reasonable doubt.

## III.

### Refusing to Declare a Mistrial

Appellant contends that the trial court abused its discretion in failing to declare a mistrial when the jury indicated it was deadlocked after more than a full day of deliberations. Additionally, appellant argues that the trial judge made the impermissible comment to the jury that "[t]he Court has to be satisfied that these cases are carefully considered," after being informed that they were deadlocked and prior to releasing them for the evening. According to appellant, this comment effectively imparted to the jury that the court would not be satisfied until a verdict was rendered. Therefore, by ordering the deadlocked jury to continue deliberating, and by making this aggravating comment prior to their release, the trial judge wrongfully procured a coerced verdict.

In response, the State maintains that the trial court properly exercised its considerable discretion permitted when determining whether to allow a jury to continue deliberating. In making this argument, the State emphasizes that when appellant moved for a mistrial, the jurors had only been deliberating for several hours, and that the jurors in fact demonstrated progress in their written communication with the judge. Further, the State notes that the comments made by the trial judge to the jurors that appellant now contends contributed to a coerced verdict were not objected to when made, and, in any event, were simply not impermissible.

A trial judge's discretion when considering whether to declare a mistrial when the jury is deadlocked is broad, and the trial judge's decision will be accorded great deference by a reviewing court. *Thomas v. State*, 113 Md.App. 1, 9, 686 A.2d 676 (1996) (quoting *Mayfield v. State*, 302 Md. 624, 490 A.2d 687 (1985)). There are no "hard and fast" rules limiting a trial judge's discretion in allowing juries to deliberate, and there is no rule that the jury may not be sent back to deliberate "once, twice, or several times." *Id.* at 9–10, 686 A.2d 676. Generally speaking, a mistrial should be declared where, after "taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id.* at 10–11, 686 A.2d 676 (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)).

After taking all of the circumstances into consideration in this case, we are convinced that the trial court did not abuse its discretion by denying appellant's motion for a mistrial and permitting the jury to continue deliberating. During the course of two days and after approximately six hours of deliberation, the jury twice indicated it was deadlocked. The jury was sent home, and the following morning returned a unanimous verdict. Under these conditions, we see no manifest necessity requiring a mistrial, nor are we of the position that the ends of public justice were defeated by the trial judge sending the jurors back once more to deliberate. With defer-

ence to the broad discretion of the trial judge, we conclude by holding that she did not err in refusing to grant a mistrial.

Likewise, we are not persuaded that any comment made by the trial judge to jurors prior to releasing them for the evening had any coercive effect on the verdict. Appellant interprets the sentence "[t]he Court has to be satisfied that these cases are carefully considered" as connoting that the court was dissatisfied that no verdict had yet been reached. We do not share appellant's interpretation of this statement, and, as a result, conclude that the trial judge did not err in making comments to the jury prior to releasing them for the evening.

## IV.

### Double Jeopardy Clause Violations

Lastly, appellant argues that sentencing appellant for multiple use-of-a-handgun charges violates the Double Jeopardy Clause of the United States Constitution. This argument is based on appellant's contention that, under the circumstances of this case, Md.Code (2002), section 4–204 of the Criminal Law Article ("CL") permits prosecution for only one sentence for use of a handgun in commission of a crime. After comparing the language of Former Article 27, section 36B(d) to the language recodified as CL section 4–204, appellant argues that changes in the wording of the statute reflect legislative intent that the unit of prosecution under the statute be the "transactional use" of the handgun. Pursuant to this reasoning, appellant reads the statute to forbid the imposition of multiple punishments (six sentences for six convictions for use of a handgun in the commission of a crime of violence) for multiple underlying crimes (involving six victims in the bank) resulting from the same criminal transaction (one armed bank robbery). The effect of this statutory interpretation, according to appellant, is that his sentence for six uses of a handgun violates the Double Jeopardy Clause.

The State, in response, contends that the trial court properly imposed six sentences on six convictions for use of a

handgun in commission of a crime of violence where the jury convicted appellant of six crimes of violence against six different victims.

In *Brown v. State,* 311 Md. 426, 535 A.2d 485 (1988), the Court of Appeals made clear that, under former Article 27, section 36B(d), the unit of prosecution for use of a handgun in the commission of a crime of violence was the number of crimes of violence against each victim. Accordingly, because each of appellant's six convictions for use of a handgun was premised on a crime of violence against six different victims, the six subsequent sentences would have been appropriate. Appellant does not attempt to distinguish his case from *Brown,* but asks us to interpret recodified CL section 4–204 as now precluding the imposition of multiple sentences in situations like his own. Appellant proffers that the codified statutory revisions represent present interpretation of past legislative intent, but in doing so effectively asks us to sidestep the Court of Appeals' holding in *Brown* in order to adopt his suggested theory. Further, while acknowledging that the Revisor's Note to section 4–204 provides "[t]his section is new language derived without substantive change from former Art. 27, § 36B(d)," appellant nonetheless asks us to discard this provision as "boilerplate language."

After considering appellant's arguments, we are unpersuaded. The Court of Appeals in *Brown* considered the accused's argument that the unit of prosecution under section 36B(d) is the criminal transaction, but left little room for interpretation when it concluded:

> We are convinced that multiple handgun use convictions and sentences are appropriate where there are multiple victims. Brown's use of a handgun put each victim in the cases at bar in fear of death or serious bodily harm. Punishment for criminal conduct should be commensurate with responsibility and a defendant who terrorizes multiple persons with a handgun is more culpable than a defendant who terrorizes only one.

We have carefully reviewed the legislative history of § 36B(d) and find no support for the position advanced by Brown. We must enforce § 36B(d) as written. Accordingly, the handgun use convictions ... are affirmed.

*Brown,* 311 Md. at 435–436, 535 A.2d 485.

We find no support for the position advanced by appellant that CL section 4–204 now requires reaching a different conclusion than that advanced by the Court of Appeals when interpreting section 36B(d) in *Brown.*

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

Concurring Opinion by MURPHY, C.J.

While I concur in the judgment, I write separately to offer two suggestions, the first of which is borrowed from Fourth Amendment jurisprudence,[1] and the second of which is based upon Judge Moylan's opinion for this Court in *Davis v. State,* 93 Md.App. 89, 611 A.2d 1008 (1992), *aff'd,* 333 Md. 27, 633 A.2d 867 (1993).

My first suggestion is that the circuit court resolve a "doubtful" and/or "marginal" *voir dire* question in favor of the party who has requested that it be asked. In the case at bar, asking the question at issue would have resulted in a more efficient use of judicial resources.

My second suggestion is that the circuit court analyze a proposed *voir dire* question by applying a test that is derived from the (no longer permissible) "compound question" test articulated as follows in *Davis, supra,* 93 Md.App. at 121–22, 611 A.2d 1008:

---

1. In *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the United States Supreme Court stated:

    Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

[A] compound question probing *both* A) the existence of a condition *and* B) the likely consequence of that condition has been deemed legally appropriate and required.

\*      \*      \*

This general rule applies, whatever the particular subject matter may be. The variation consists of nothing more than filling in a blank with respect to Condition A. Condition A, of course, can be anything. "Are you now or have you ever been a member of [the American Red Cross, ...]?" Component B is a constant. "... and would such condition make it impossible (or difficult) to return a fair and impartial verdict based only upon the evidence in this case?" An affirmative answer to Consequence B is always a ground for disqualification, whatever its cause.

A modification of this test is required because, in *Dingle v. State,* 361 Md. 1, 759 A.2d 819 (2000), the Court of Appeals abolished the "compound question" rule. The modification, however, merely requires that there be (1) a *direct* inquiry into the existence of any condition the reasonably likely consequence of which would impair a prospective juror's ability to return a fair and impartial verdict based only upon the evidence presented in open court, and (2) as to any prospective juror who responds in the affirmative to that inquiry, appropriate "follow up" questions that focus upon the consequences of the particular condition.

An excellent example of this suggested procedure can be found in *United States v. Napoleone,* 349 F.2d 350 (3d Cir. 1965), which involved a prosecution for false personation of a federal agent. The defendant was a claims investigator who regularly conducted "pretext" interviews of personal injury claimants during which he would lie about his identity and the purpose of the interview. Concerned that the "pretext" interview evidence might prevent one or more jurors from fairly and impartially deciding the issue of whether the defendant actually identified himself as an employee of the federal government, defense counsel requested the following *voir dire* questions:

1. If the testimony in this case discloses that the defendant, a private investigator, engaged in what are known as "pretext" investigations, in which, acting pursuant to his employer's instructions, he concealed the true identify of the company in whose behalf the investigation was being made, misleading the person he was interrogating, if necessary, to effectuate the concealment, would you feel that such representation was morally or ethically wrong?

2. [To be asked of those who answered "yes" to Question 1.] Do you feel that such misrepresentation or concealment by the defendant would so prejudice you against him that you could not consider the charges objectively and fairly, giving him the benefit of the presumption that he is innocent?

That request was denied and the defendant was convicted. The United States Court of Appeals for the Third Circuit reversed Napoleone's conviction, explaining:

Since the crux of the defense was that while the defendant had lied concerning the purpose of his investigation he had not presented himself as ["]an employee of the Veterans Administration,["] he had the right to have prospective jurors questioned as to whether they had such a moral or ethical repugnance toward liars and lying that they could not evaluate his testimony ["]objectively and fairly.["]

*Id.* at 354.

I recommend that trial judges apply the above cases to all requested *voir dire* questions. When presented with a particular *voir dire* question, the trial judge should ask himself or herself, "does this question probe for a condition that would be likely to impair a juror's ability to decide this case on the evidence presented?" If the answer to that question is "yes," the question should be asked.

Had this test been applied in *State v. Thomas,* 369 Md. 202, 798 A.2d 566 (2002), the circuit court would have concluded that, in a case in which the defendant has been charged with selling drugs to an undercover officer, it is likely that a prospective juror's attitude about drugs would impair his or

her ability to be fair and impartial. Had this test been applied in *Sweet v. State*, 371 Md. 1, 806 A.2d 265 (2002), the circuit court would have concluded that a defendant charged with the sexual child abuse of his girlfriend's eleven year old daughter was entitled to a *voir dire* question that asked the venire, "Do the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?" Had this test been applied in *Baker v. State*, 157 Md.App. 600, 853 A.2d 796 (2004), the circuit court would have concluded that, in an assault case involving the defenses of "self-defense" and "defense of others," it is likely that a prospective juror's attitude about handguns would impair his or her ability to be fair and impartial when deciding whether those defenses are available to a defendant who used a handgun to shoot the alleged victim. Had this test been applied in *Logan v. State*, 164 Md.App. 1, 882 A.2d 330 (2005), No. 2361, September Term, 2003 (filed September 7, 2005), the circuit court would have concluded that, in a murder case in which the defendant has filed a plea of not criminally responsible by reason of insanity, it is likely that a prospective juror's attitude about the "insanity defense" would impair his or her ability to be fair and impartial.

Applying this test to the case at bar, in which appellant was charged with (1) robbery with a deadly weapon, and (2) use of a handgun during the commission of that robbery, it is unreasonable to hypothesize a prospective juror who *could* be fair and impartial when deciding whether the appellant was guilty of robbery with a deadly weapon, but who *could not be* fair and impartial when deciding whether the appellant was guilty of robbery perpetrated by the use of a handgun. Under these circumstances, the *voir dire* questions that were sufficient to identify prospective jurors who could not fairly and impartially decide the armed robbery charge were also sufficient to identify prospective jurors who could not fairly and impartially decide the handgun charge. Appellant was therefore not entitled to a *voir dire* question asking the venire, "Does anyone have strong feelings concerning the use of handguns that would not allow [him or her] to be fair and impartial?"