913 A.2d 671

**Harold SINGFIELD, Jr.**

v.

**STATE of Maryland.**

**No. 386, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Dec. 29, 2006.

duced into evidence prior to this appeal. In any event, it does not alter the outcome in this case.

Brian J. Murphy, Baltimore, for appellant.

Diane E. Keller (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel SALMON, ADKINS, MEREDITH, JJ.

SALMON, J.

Harold Singfield, Jr., was convicted by a jury sitting in the Circuit Court for Baltimore City of second-degree murder, use of a handgun in commission of a felony or a crime of violence, and unlawfully wearing, carrying, and transporting a handgun.[1] After sentencing, Singfield noted this appeal and presents three questions for our review:

---

1. Singfield was sentenced to twenty years' incarceration for the second-degree murder conviction and a consecutive twenty-year term, the first

I.  Did the trial court err in declining to ask the jury on *voir dire* whether the nature of the case—murder with a handgun—would make it impossible or difficult to render a fair and impartial verdict?

II.  Did the trial court abuse its discretion in failing to allow cross-examination of Devon Harrison concerning whether Harrison thought he might be offered a deal on his pending charges if he picked appellant out of a photo array?

III.  Did the trial court abuse its discretion in permitting the State to make unfairly prejudicial comments in rebuttal argument?

We answer appellant's first question in the affirmative and reverse and remand appellant's case to the Circuit Court for Baltimore City for a new trial.  In light of our decision, we need not address appellant's remaining questions, nor is it necessary to set forth the evidence presented at trial that supported appellant's convictions.

## I.  *ANALYSIS*

### A.

At the conclusion of *voir dire*, the trial court inquired if counsel had any requests for additional *voir dire*.  Defense counsel responded:

Yes, Your Honor.  I would request that the court ask the question that I propounded in my voir dire, Question Number 5, which asks if the nature of this case, specifically because it involves murder with a handgun, would make it impossible or difficult to render a fair and impartial verdict.[2]

The court declined to ask the additional question, stating:

---

five to be served without the possibility of parole, for the use of a handgun conviction.  The remaining convictions were merged for purposes of sentencing.

**2.**  Appellant's proposed Question Number 5, filed with the court, reads:

Well, we've asked the jury—we've advised the jury of the nature of the charges. We've also advised the jury to ask—to tell us if there's—they've been the victim of a weapon's charge—or victim of a weapon's crime or had someone in the family who was accused of a weapon's crime.

We've also asked them if they had any reason whatsoever ... that would affect their ability to render a fair and impartial decision.

I think when you take all those questions into—in totality, they have been presented with circumstances that are covered by this question without being asked this question in this form. So we will decline to answer—ask this question or represent this further question to the jury.

Defense counsel excepted to the court's failure to ask the question.

On appeal, appellant asserts that the proposed question was nearly identical in purpose and form to the question at issue in *State v. Thomas*, 369 Md. 202, 798 A.2d 566 (2002). In *Thomas*, this Court and the Court of Appeals concluded that the trial court should have been asked the proposed question. He also refers us to *Sweet v. State*, 371 Md. 1, 806 A.2d 265 (2002), in support of his position.

The State counters that the rationale of *Thomas*, which involved a violation of the narcotics laws, and *Sweet*, which involved assault and sexual abuse charges, should not be extended to encompass all other charges. The State further asserts that the trial court correctly concluded that the questions already propounded would have uncovered any bias the prospective jurors possessed concerning murder with a handgun.

In *Davis v. State*, 333 Md. 27, 34–35, 633 A.2d 867 (1993), the Court said:

Does any member of the jury panel feel that the nature of this case would make it difficult or impossible for you to render a fair and impartial verdict, specifically because this case involves *a murder with a handgun?*

The common law of this State vests trial judges with discretion to regulate *voir dire*. ... [T]he scope of *voir dire*, and the form of the questions propounded rests firmly within the discretion of the trial judge. The trial judge's discretion regarding the scope of a proposed avenue of *voir dire* is governed by one primary principle: the purpose of "the inquiry is to ascertain 'the existence of cause for disqualification and for no other purpose.' " *McGee v. State*, 219 Md. 53, 58, 146 A.2d 194 (1959) (quoting *Adams v. State*, 200 Md. 133, 140, 88 A.2d 556 (1952) (citations omitted))....
"Questions not directed to a specific ground for disqualification but which are speculative, inquisitorial, catechising or 'fishing,' asked in the aid of deciding on peremptory challenges, may be refused in the discretion of the court, even though it would not have been error to have asked them." *McGee*, 219 Md. at 58–59, 146 A.2d 194.

(Some citations omitted.)

Furthermore,

"[t]here are two areas of inquiry that may uncover cause for disqualification: (1) an examination to determine whether prospective jurors meet the minimum statutory qualifications for jury service, and (2) 'an examination of a juror ... conducted strictly within the right to discover the state of mind of the juror in respect to the matter in hand or any collateral matter *reasonably liable* to unduly influence him.' "

*Baker v. State*, 157 Md.App. 600, 611, 853 A.2d 796 (2004) (quoting *Davis*, 333 Md. at 35–36, 633 A.2d 867 (citations omitted) (emphasis added in *Davis* )).

In *Thomas v. State*, 139 Md.App. 188, 775 A.2d 406 (2001), *aff'd*, 369 Md. 202, 798 A.2d 566 (2002), the defendant was convicted of distribution of cocaine and possession of cocaine. We held that the trial court abused its discretion in failing to ask the prospective jurors:

Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it

would be difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged? *Id.* at 195, 775 A.2d 406.

We concluded that the question "aims directly at biases related to the defendant's alleged criminal act, which when uncovered, will disqualify a juror if the bias is so strong as to impair the juror's impartiality." *Id.* at 202, 775 A.2d 406. We further explained:

> Plainly stated, observing that most citizens have a bias against proscribed criminal acts is not extraordinary. Yet, a bias that is so strong against a particular criminal act that it distorts a juror's ability to render a fair and impartial verdict must be uncovered. [The proposed question] was reasonably likely to identify jurors with strong feelings toward narcotics laws that could hinder their ability objectively to resolve the matter presented.

> Such a bias may exist for any number of reasons, including, but not limited to, a juror's own struggle with substance abuse or a juror's friend or family member whose life had been negatively altered by the influence of drugs in our society. Furthermore, it is important to note that such bias does not readily present itself to the court without the aid of properly phrased voir dire questions.

*Id.* at 203–04, 775 A.2d 406.

In affirming our decision, the Court of Appeals wrote in *Thomas,* "A question aimed at uncovering a venire person's bias because of the nature of the crime with which the defendant is charged is directly relevant to, and focuses on, an issue particular to the defendant's case and, so, should be uncovered." *State v. Thomas,* 369 Md. 202, 214, 798 A.2d 566 (2002) (citation omitted); *see also Thomas,* 139 Md.App. at 207–08, 775 A.2d 406 (the question presented by the defendant was "reasonably likely to uncover a bias '*directly related to the crime* '") (quoting *Dingle v. State,* 361 Md. 1, 10, 759 A.2d 819 (2000)).

In *Sweet v. State,* 371 Md. 1, 806 A.2d 265 (2002), the defendant was convicted of second-degree assault and third-

degree sexual offense against a minor. The defendant requested that the trial court ask the jury panel: "Do the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?" The trial court declined to ask the question. Relying on *Thomas,* the Court of Appeals held that the trial court abused its discretion in failing to pose the question because it was directed at biases specifically related to the defendant's alleged criminal acts that, if uncovered, would be disqualifying because such a bias would impair the ability of the prospective juror to be fair and impartial. *Id.* at 9–10, 806 A.2d 265. *But see Uzzle v. State,* 152 Md.App. 548, 561–62, 832 A.2d 869 (2003) (in a murder trial, defendant's requested *voir dire* inquiry into whether jurors had strong feelings about guns or gun owners was "a far-ranging, almost open-ended exploration of juror attitudes, experiences, and philosophies that might have been of immeasurable value in guiding the appellant's use of his peremptory challenges" and that the trial court did not abuse its discretion in declining to allow this "very peripheral probing of attitudes").

In *Newman v. State,* 156 Md.App. 20, 845 A.2d 71 (2003), *rev'd on other grounds,* 384 Md. 285, 863 A.2d 321 (2004), the defendant was alleged to have conspired with a friend to kill her husband because she believed that he was sexually molesting their two sons. Newman was convicted of conspiracy to commit first-degree murder, attempted first-degree murder, and related offenses.

At trial, Newman wanted the court to ask the following voir dire questions:

Has any member of the jury been accused or charged with child abuse, physical abuse, or domestic violence?

Is any member of the jury a member of groups advocating fathers' rights in divorce and custody hearings?

The trial court declined to ask the aforementioned questions, and on appeal, Newman alleged that this constituted reversible error. We disagreed and held that the "questions asked by the trial court were sufficient to identify potential

bias related to child abuse or custody as they relate to [Newman's] prosecution for conspiracy to commit murder." *Id.* at 52, 845 A.2d 71 (footnote omitted). We further wrote:

At the beginning of the voir dire process, the trial court informed the venire of the basic facts of the case, including the fact that the State relied on appellant's failed attempts to gain custody of her children as the motive for the conspiracy. The court then asked a series of questions designed to draw out possible bias of the venire, including: Does any member of the prospective jury panel feel such sympathy for persons in the defendant's circumstances that you would be biased in the defendant's favor? Likewise, does anyone harbor feelings that would bias you in favor of the prosecution?

*Id.* at 53, 845 A.2d 71 (footnote omitted).

More recently, in *Baker v. State,* 157 Md.App. 600, 853 A.2d 796 (2004), the defendant was alleged to have shot the victim. The trial court declined to ask the prospective jurors: "[D]o you have any bias or prejudice concerning handguns which would prevent you from fairly weighing the evidence in this case?" We concluded that the trial court abused its discretion in failing to so inquire. Judge James Eyler wrote for this Court:

[A]ppellant shot an unarmed man with a handgun, allegedly in self-defense or defense of his girlfriend. One of the facts the jury might have to decide was whether appellant used reasonable force. The trial court should have asked whether any prospective juror had strong feelings about handguns that would have affected his or her ability to weigh the issues fairly.

*Baker,* 157 Md.App. at 613, 853 A.2d 796.

The defense's proposed *voir dire* in *Curtin v. State,* 165 Md.App. 60, 884 A.2d 758 (2005), *aff'd,* 393 Md. 593, 903 A.2d 922 (2006), inquired: "Does anyone have strong feelings concerning the use of handguns that would not allow them [sic] to be fair and impartial?" Curtin was charged with armed robbery and related offenses, and relying on *Baker,* he alleged

that the trial court erred in declining to propound this question during *voir dire.* This Court held that there was no error and distinguished the case from *Baker:*

Here, appellant was charged with multiple counts of armed robbery, use of a handgun in the commission of a crime of violence, and assault. The charges arose from an incident where, according to the State's evidence, appellant and an accomplice entered a bank armed with a gun. They told everyone to "get down," jumped over the bank teller's station, and proceeded to rob the bank. There was no evidence presented at trial that the gun was ever fired. Appellant's defenses were based on theories suggesting that appellant was not a participant in the bank robbery or, alternatively, that there was no evidence that a real gun was in fact used. Under these circumstances, we are not persuaded that the trial court abused its discretion in refusing to ask appellant's proposed voir dire question regarding attitudes of potential jurors toward guns.

In *Baker,* jurors were required to consider (1) whether the defendant actually believed he was in immediate danger, and, if this belief was reasonable, (2) whether, by discharging his gun, the defendant used no more force than was reasonably necessary. Under those circumstances, a juror who believed that use of a handgun is never appropriate would not be able to give fair and impartial consideration to Baker's self-defense argument. At the same time, a juror with strong feelings in favor of handguns might have a "shoot first, ask questions later" attitude that would unfairly prejudice the trial process. Therefore, under the circumstances in *Baker,* and in light of the reasonable use of force argument Baker raised in his defense, a juror's strong feelings about the use of handguns was an essential area of inquiry.

In this case, however, potential juror bias about handguns does not go so directly to the nature of the crime. Appellant was accused of robbing a bank with an accomplice who was brandishing a gun. Unlike the situation in *Baker,* no analysis or weighing of issues pertaining to the gun was

required by jurors in this case, other than accepting or rejecting the State's evidence demonstrating that a gun was used in the commission of the crime. The proposition that a juror's strong feelings for or against handguns would necessarily preclude him or her from fairly weighing the evidence in this case—where there was clearly no question relating to the "reasonableness" or "justifiableness" of the use of the gun under the circumstances—is based upon a transcendental line of reasoning with which we disagree.

*Baker* makes clear that a proposed voir dire question should not be probing or abstract, but should directly address potential jurors' biases, prejudices, and ability to weigh the issues fairly. The inquiry should focus on the venire person's ability to render an impartial verdict based solely on the evidence presented. Appellant's proposed voir dire question did not directly address a juror's ability to weigh the issues fairly or render an impartial verdict in this case. Given the nature of the charges against appellant, a juror who had strong feelings for or against handguns could nonetheless be fair and impartial.

Additionally, after balancing the judicial interest of probing into the likelihood of uncovering disqualifying juror partiality or bias with the interests of judicial efficiency and preservation of a court's limited resources, we are troubled by the precedential consequences of expanding our holding in *Baker* to effectively require a court to ask whether any prospective juror has "strong feelings on handguns" in every case in which the jury will receive evidence that a handgun was used in the commission of a crime. Accordingly, we conclude that the trial court did not err in declining to give appellant's proposed voir dire question asking whether any potential juror had strong feelings concerning the use of handguns that would make him or her unable to render a fair and impartial verdict based on the evidence.

*Id.* at 68–70, 884 A.2d 758.

In affirming our *Curtin* decision, the Court of Appeals wrote:

[T]he jury was called upon, as always, to measure whether the State had met its burden of proof as to whether Mr. Curtin was the perpetrator and whether the gun was real, not whether Mr. Curtin was legally in possession of a handgun, or used the handgun in a reasonable or justifiable way, situations which could, conceivably, evoke strong feelings about handguns. Whether a venireman has strong feelings about handguns would not render him or her more or less likely to convict Mr. Curtin of the charges on the evidence presented at trial, and therefore the trial judge did not abuse his discretion in refusing to ask the question.

*Curtin v. State,* 393 Md. 593, 613, 903 A.2d 922 (2006) (footnote omitted).

In the case *sub judice,* at the beginning *voir dire,* the trial court explained to the jurors:

Ladies and Gentlemen of our jury, the Court will be asking you questions regarding your qualifications to serve as jurors in this particular case. This part of the examination is known as the voir dire.

Voir dire examination is used to determine if your decision in this case would in any way be influenced by opinions you—that you now hold or by some personal experiences or special knowledge that you may have concerning the subject matter which we're about to try.

The object of the examination is to obtain 12 persons who will try impartially the issues of this case upon the evidence presented in the courtroom without being influenced by any other external or outside factors.

Please understand that this questioning is not for purpose of prying into your affairs for personal reasons of the parties or the Court but is only for the purpose of obtaining an impartial jury to decide the issues in this case.

\*    \*    \*

We ask that you err on the side of caution. In other words, if you believe that you—that this question may apply to you but you're not sure, please volunteer to bring forward your information or unclarity.

The court also informed the venire of the nature of the offense:

Ladies and Gentlemen, this case is the *State of Maryland versus Harold Singfield, Jr.* In this case, the State of Maryland has brought charges against Mr. Singfield alleging that on or about May 13, 2003, in the area of the 1500 block of Argyle Avenue in Baltimore City, Mr. Singfield did commit the crime of first-degree murder against Wayne Fisher.

The court then asked, *inter alia*, the following questions:

Have you, or any member of your immediate family, been convicted of a crime that involves violence or a handgun or other weapon? The second part is have you or any member of your immediate family been a victim of a crime of violence or a crime that involved a handgun or a crime that involved a weapon?

\*      \*      \*

Is there any member of the jury panel who holds any beliefs, no matter how formed, related to the race, the sex, the religion, the color, or national origin or other personal attributes of either the person who is charged or any of the witnesses who may testify such that it would affect your ability to render a fair and impartial verdict based on the evidence and the law in this case?

\*      \*      \*

Is there any member of the jury panel who knows of— who holds any belief, no matter how formed that prevents you or affects your ability to render a judgment in a case of this nature?

\*      \*      \*

Does any member of the jury panel know of any reason whatsoever that we might not have discussed but might affect your ability to render a fair and impartial verdict based solely upon the evidence presented in the courtroom and the law that applies to this case?

When the trial court described the nature of the case, it failed to inform the jurors that the murder was committed with a handgun or any kind of weapon. As a result, when the court asked the various questions concerning any biases the jurors might have, the prospective jurors were unaware that a handgun was involved in the offense. They were thus never asked, even in light of the court's repeated questions designed to uncover potential biases, to consider whether their beliefs concerning the use of a handgun in commission of a murder would prevent them from rendering a fair and impartial verdict.

Further, although the court asked the prospective jurors if they or any member of their immediate family had been convicted of or had been the victim of a crime of violence or a crime that involved a handgun or a weapon, the potential jurors may have had strong beliefs, biases, or feelings concerning the use of a handgun in commission of a murder regardless of how they answered that question. Accordingly, the questions asked by the trial court did not adequately cover the bias Question Number 5 sought to reveal.

Nor does appellant's case fall within the ambit of the *Curtin* decision. Although, as defense counsel argued in closing, appellant's defense was that he did not commit the murder, counsel also addressed the offense of voluntary manslaughter and commented on the defense of imperfect self-defense. Moreover, the jury was instructed as to voluntary manslaughter, partial self-defense, and complete self-defense. Therefore, in contrast to *Curtin*, the jurors had to consider more than whether appellant was the criminal agent who killed the victim. Rather, as in *Baker*, the jurors might also have had to determine whether appellant used the handgun in a reasonable or justifiable way, might have evoked strong feelings or biases concerning handguns.

Defense Question Number 5 was aimed, as were the questions in *Thomas, Sweet,* and *Baker,* directly at biases related to appellant's alleged criminal act and was reasonably likely to identify jurors with such strong feelings toward the use of

handguns to commit murder that it would hinder their ability to render a fair and impartial verdict. Moreover, because we are unable to conclude that the questions actually asked by the trial court would have revealed the potential biases defense Question Number 5 was designed to uncover, the conviction cannot stand.

**JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY.**